**In the Interest of B.M.R.,
a minor child.**

No. 01–01–00211–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

Aug. 29, 2002.

Brian J. Fischer, Houston, for Appellant.

Carolyn Cook Robertson, Houston, for Appellee.

Panel consists of Chief Justice SCHNEIDER and Justices TAFT and RADACK.

## OPINION

MICHAEL H. SCHNEIDER, Chief Justice.

The trial court terminated the parental rights of appellant, Stephen Mark Rousset, after a bench trial, and he now appeals. Appellant alleges the trial court erred in denying his motion to strike a portion of the pleadings and denying his motion for

continuance. He also contends section 161.001(1)(Q) of the Family Code is unconstitutionally vague, and he challenges the legal and factual sufficiency of the evidence. We affirm.

## Background

Appellees, Veronica Annette LeBlanc and Daniel John LeBlanc, sued to terminate appellant's parental rights to B.M.R. and sought to have the child adopted by Mr. LeBlanc. The trial court granted both requests.

Appellant met Veronica in 1993, and they were married in April 1996. The couple separated in January 1998, while Veronica was pregnant with B.M.R. The child was born in May 1998, and the couple divorced in December 1998, when the child was seven months old. The trial court found that appellant had spent less than 15 hours with his child before the divorce. After the divorce, the child continued to reside with Veronica. Veronica and Daniel LeBlanc were married in February 1999. The child has lived with the couple since their marriage and believes Daniel LeBlanc is her father.

In October 1998, appellant was arrested while transporting more than 300 pounds of marijuana by car. He pleaded guilty to the federal charge of possession with intent to distribute in August 1999. Appellant was sentenced to 70 months in federal prison and was serving that sentence when this suit was brought against him. Appellant was not allowed to attend the trial, but he testified by deposition.

The trial court made numerous findings of fact supporting its conclusion that two grounds for termination had been proven and termination would be in the best interest of the child.

## Motion to Strike and Motion for Continuance

■ In their Second Amended Petition, filed on December 27, 2000, the LeBlancs added a new ground for the termination of appellant's parental rights. The amended petition stated that appellant had "knowingly engaged in criminal conduct that has resulted in the parent's conviction of an offense and confinement or imprisonment and inability to care for the child for not less than two years from the date of filing the petition." [1] On the first day of the trial, January 5, 2001, appellant's counsel argued that there had been insufficient time to prepare a defense to this ground because of appellant's incarceration, and he moved that the new ground be struck from the pleadings or a continuance granted. The court denied both motions, and the trial proceeded. Appellant states in his first and second points of error that it was error to deny these two motions.

On appeal, appellant's four sentence argument for both points of error contains no citation to any legal authority. Accordingly, appellant has waived these two points of error because of inadequate briefing. *See* Tex.R.App. P. 38.1(h); *Fredonia State Bank v. Gen. Am. Life Ins. Co.*, 881 S.W.2d 279, 284 (Tex.1994); *Trenholm v. Ratcliff*, 646 S.W.2d 927, 934 (Tex. 1983).

We overrule appellant's first and second points of error.

## Constitutionality of Section 161.001(1)(Q)

■ In his third point of error, appellant argues section 161.001(1)(Q) of the Texas Family Code is unconstitutionally vague and ambiguous. Appellant did not

---

1. The new ground was based on section 161.001(1)(Q) of the Family Code. Tex. Fam. Code Ann. § 161.001(1)(Q) (Vernon Supp. 2002).

present this issue to the court at trial and, accordingly, has not preserved any error for our review. TEX.R.APP. P. 33.1; *Dreyer v. Greene*, 871 S.W.2d 697, 698 (Tex.1993); *In re K.C.M*, 4 S.W.3d 392, 394 (Tex.App.-Houston [1st Dist.] 1999, pet. denied).

We overrule appellant's third point of error.

## Legal and Factual Sufficiency

 Appellant's fourth and fifth points of error challenge the legal and factual sufficiency of the evidence. When, as here, a party without the burden of proof challenges the legal sufficiency of the evidence, we will sustain the challenge only if, considering the evidence and inferences in the light most favorable to the finding, there is not more than a scintilla of evidence supporting it. *See Burroughs Wellcome Co. v. Crye*, 907 S.W.2d 497, 499 (Tex.1995); *Stafford v. Stafford*, 726 S.W.2d 14, 16 (Tex.1987). "More than a scintilla of evidence exists where the evidence supporting the finding, as a whole, 'rises to a level that would enable reasonable and fair-minded people to differ in their conclusions.'" *Burroughs Wellcome*, 907 S.W.2d at 499 (quoting *Transp. Ins. Co. v. Moriel*, 879 S.W.2d 10, 25 (Tex. 1994)).

The termination of parental rights must be supported by clear and convincing evidence. TEX. FAM.CODE ANN. § 161.001 (Vernon 1996). The supreme court recently held that termination findings must be upheld against a factual sufficiency challenge if the evidence is such that the factfinder could reasonably form a firm belief or conviction about the truth of the State's allegations. *In re C.H.*, 45 Tex. Sup.Ct. J. 1000, 1000, 1005 (July 3, 2002).

In order to terminate appellant's parental rights, the court was required to find two things. First, appellant must have committed one of the acts or omissions prohibited by section 161.001(1) of the Family Code. TEX. FAM.CODE. ANN. § 161.001(1) (Vernon 1996 & Supp.2002). Second, the termination must have been found to be in the child's best interest. TEX. FAM.CODE. ANN. § 161.001(2) (Vernon 1996). The trial court found that appellant violated sections 161.001(1)(E), which regards endangerment of the child, and 161.001(1)(Q), which is based on a parent's confinement and inability to care for the child.

### Confinement and Inability to Care for the Child

Because much of the evidence at trial and the arguments on appeal focused on the effect of appellant's incarceration, we will address section 161.001(1)(Q) first. A violation of section 161.001(1)(Q) occurs when a parent has knowingly engaged in criminal conduct that has resulted in the parent's conviction of an offense and confinement or imprisonment and inability to care for the child for not less than two years from the date of filing the petition. TEX. FAM.CODE. ANN. § 161.001(1)(Q) (Vernon Supp.2002).

It is undisputed that appellant has been convicted of a federal crime, possession with intent to distribute marijuana, and was imprisoned at the time of trial. Appellant testified by way of deposition that the earliest he could be released was February 2003.[2] This is more than two years from December 27, 2000, the date the peti-

---

2. Under questioning from his own counsel, the following exchange occurred:

 [Attorney]: What's your understanding as the first possible date that you may be released from this institution in Beaumont?

 [Appellant]: With good time and the halfway house placement program, February of 2003.

tion was amended to include section 161.001(1)(Q) as a ground for termination. The LeBlancs did not dispute appellant's testimony about his earliest possible release, and no prison record or testimony by prison officials was offered by any party to confirm or contradict the date given by appellant. Appellant's testimony was legally sufficient to support the court's finding that he would be confined for not less than two years from the date of filing.

With respect to appellant's factual sufficiency challenge, the only evidence suggesting an earlier date was (1) appellant's testimony that he had told his other children he was coming home within two years and (2) a June 2000 letter from appellant to Veronica that stated, "I should be home by Feb. 2003, although there is a chance I could be home within a year." No further elaboration was provided about how appellant could be home within a year. Even in light of this conflicting evidence, we hold that appellant's testimony about his earliest possible release could produce a firm belief that appellant had committed a criminal act and would be confined for not less than two years from the date of filing.

Section 161.001(1)(Q) also requires showing the parent's inability to care for the child for not less than two years from the date of filing the petition. TEX. FAM.CODE. ANN. § 161.001(1)(Q). This is an additional requirement and is not met by showing incarceration alone. *See In re Caballero*, 53 S.W.3d 391, 395–96 (Tex. App.-Amarillo 2001, pet. denied). The court found that appellant lacked concern for the present and future emotional and physical needs of B.M.R. Although the term "care" has not been defined, either in the statute itself or in subsequent case law,

we hold that among the factors to be considered when deciding if there is an inability to care are the availability of financial and emotional support from the incarcerated parent.

Appellant testified that he had no financial means for supporting the child while in prison, but he would attempt to have his child support obligation reduced and would then try to borrow money to pay these obligations. Appellant's friend Justin Truesdell, testified that he and others would help pay child support if it was reduced, but currently no money was available for the child because Truesdell was also helping to finance appellant's legal costs. Appellant also had a history of failing to pay child support fully for B.M.R. and several of his other children. Even taken in the best light for appellant, the evidence only demonstrated that appellant had the desire to support his child financially, but he had not secured the means to do so.

Appellant testified that he would attempt to provide emotional support as best he could, given his incarceration. Appellant, the father of five children with four women, testified that he hoped B.M.R. would visit him in prison, as did three of his other children. He also stated that he would participate in the child's life through letters and phone calls.

However, both Daniel and Veronica LeBlanc testified that, prior to his incarceration, appellant had offered to allow Mr. LeBlanc to adopt B.M.R. in exchange for money.[3] Appellant testified that he had only seen B.M.R. on five or six occasions since the divorce and had spent a total of 31 hours with his daughter in the year and

---

**3.** Veronica LeBlanc testified the amount offered was $23,000, while her husband stated the amount as $20,000. Appellant denied the accusation and asserted that the LeBlancs had offered him money if he would consent to the adoption. The trial court found, however, that appellant did make an offer to the LeBlancs.

a half from her birth until he entered prison. His testimony showed he had not utilized numerous visitation opportunities afforded him under the divorce decree. This lack of visitation was partially due to his failure to take drug tests imposed as a visitation condition. He did not send gifts or cards on the two birthdays and Christmases that had occurred in B.M.R.'s life. Further, appellant had a history of making little contact with his oldest child, at one point taking eight years between visits.

Thus, although many of the LeBlancs' allegations were disputed, there is more than a scintilla of evidence to support the court's conclusion that appellant had an inability to care for B.M.R. while he was in prison. The evidence is also strong enough to produce a firm belief in this conclusion. We hold that the evidence is legally and factually sufficient to support the court's conclusion that appellant had an inability to care for the child for not less than two years from the date of filing the petition. *See* TEX. FAM.CODE ANN. § 161.001(1)(Q). The evidence was legally and factually sufficient to support the trial court's finding that the section 161.001(1)(Q) ground for termination was proven by clear and convincing evidence.

Because we have held that the requirements of section 161.001(1)(Q) have been satisfied, we need not address whether the evidence of endangerment was sufficient under section 161.001(1)(E).

*Best Interest of the Child*

■ We must now address the best interest of the child. TEX. FAM.CODE ANN. § 161.001(2) (Vernon 1996). The Supreme Court has defined the following non-exclusive list of factors that may be considered when determining the best interest of the child:

1. The child's desires;

2. The child's physical and emotional needs, now and in the future;

3. The emotional and physical danger to the child, now and in the future;

4. The parental ability of the individuals seeking custody;

5. The programs available to assist these individuals in promoting the child's best interest;

6. The plans for the child by the individual or agency seeking custody;

7. The stability of the home or proposed placement;

8. The parent's act or omissions that may indicate the existing parent child relationship is not a proper one; and

9. Any excuse for the parent's acts or omissions.

*Holley v. Adams,* 544 S.W.2d 367, 371–72 (Tex.1976); *K.C.M.,* 4 S.W.3d at 394–95. There is a strong presumption that the best interest of the child is served by keeping custody in the natural parent. *K.C.M.,* 4 S.W.3d at 395. On appeal, we ask whether the factfinder could reasonably have formed a firm conviction or belief that terminating appellant's parental rights was in B.M.R.'s best interests. *In re C.H.,* 45 Tex. Sup.Ct. J. at 1006.

Here, the court decided it was in the child's best interest to terminate appellant's parental rights and allow the child to be adopted by the person she believed to be her father, Daniel LeBlanc.[4] We start by examining the *Holley* factors.

*i. The desires of the child*

4. It should be noted that maintaining appellant's parental rights would not exclude B.M.R. from interacting with Daniel LeBlanc. To the contrary, LeBlanc testified that he would continue to love B.M.R. as if she were his own child regardless of the outcome of the proceeding.

B.M.R. was too young to express her wishes on the stand, but the evidence clearly supported the court's finding that she considers Daniel LeBlanc to be her father. The child has lived with Mr. Le-Blanc since he married her mother when B.M.R. was nine months old. The evidence showed that this was a stable home. Appellant acknowledges that the child probably has little, if any, conscious knowledge of him.

*ii. The child's physical and emotional needs, now and in the future*

The court found that appellant lacked concern for the present and future emotional and physical needs of the child. As noted above in our discussion of section 161.001(1)(Q), the evidence was legally and factually sufficient to support this finding based on the minimal contact appellant had had with the child and his current inability to provide financially for her.

The court also found that the child had benefitted and thrived from the presence and influence of Daniel LeBlanc. This finding was supported by the testimony of LeBlanc family members and was not disputed by appellant.

*iii. The emotional and physical danger to the child, now and in the future*

Appellant and both the LeBlancs have had substance abuse problems in the past. All have attended Alcoholics Anonymous and Narcotics Anonymous, but no evidence suggested that appellant or the LeBlancs had used alcohol or drugs in several years. However, appellant's involvement with drug trafficking, which he claims was a one-time mistake, raises legitimate fears for the future safety of the child.

*iv. The parental ability of the individuals seeking custody*

Appellant's past parenting history towards B.M.R. and his other children includes long periods without visitation and failures to financially provide for his children financially. Appellant's testimony, and that from his family members, suggested that when he does interact with his children he can be an attentive, loving, and playful father.

Evidence showed Daniel LeBlanc has been a good father figure for B.M.R. and has been involved in her life since the day she was born. The LeBlancs also have a biological child, and evidence showed that Mr. LeBlanc has exhibited positive fathering skills towards that child as well.

*v. The programs available to assist these individuals in promoting the child's best interest*

Appellant has testified that he has taken steps to improve himself while in prison. He is taking college courses, exercises regularly, and has quit smoking. However, no evidence suggested that he has improved his parenting skills. The LeBlancs indicated that they would seek professional advice on how and when to tell B.M.R. about her biological father.

*vi. The plans for the child by the individual or agency seeking custody*

The LeBlancs have begun saving for the child's college education. Appellant testified that he gave Veronica furniture and jewelry valued at $115,000, some of which was to be sold and the money placed in a trust fund for B.M.R.

*vii. The stability of the home or proposed placement*

Both Veronica and Daniel LeBlanc testified that their marriage was happy and stable. Daniel LeBlanc is earning over $100,000 at his job and Veronica is able to stay at home to care for the children. This is the fourth marriage for Veronica, however, and her two-year marriage to appellant had, thus far, been her longest.

Appellant intends to marry the mother of his fifth child when he is released from prison and is established financially. In the past he had made over $100,000 a year in the auto sales business, and he is confident he can do so again.

*iix. The parent's act or omissions that may indicate the existing parent child relationship is not a proper one.*

As previously noted, appellant spent no more than 31 hours with B.M.R. before going to prison. Since being incarcerated, he had made only minimal attempts to maintain contact.

*ix. Any excuse for the parent's acts or omissions.*

Appellant's incarceration certainly limits his ability to visit B.M.R., but his prior history of limited visitation and his limited contact by phone and mail supports the court's finding that such an excuse is not adequate.

Thus, our examination of the *Holley* factors clearly shows that more than a scintilla of evidence exists to support the trial court's conclusion that the best interest of the child was served by the termination of appellant's parental rights. In addition to the *Holley* factors, appellant's poor past performance in caring for his other children is also a factor to consider when evaluating the best interest of B.M.R. *See In re C.H.,* 45 Tex. Sup.Ct. J. at 1007.

The evidence was sufficient to allow the trial court to form a firm belief that termination was in the best interest of B.M.R. We hold the evidence to be legally and factually sufficient to support both the termination ground under section 161.001(1)(Q) and the best interest of the child requirement of section 161.001(2).

We overrule appellant's fourth and fifth points of error.

The judgment of the trial court is affirmed.