**In the Interest of E.S.S.**

**No. 2–03–074–CV.**

Court of Appeals of Texas, Fort Worth.

March 11, 2004.

Beth Poulos, Arlington, TX, for Appellant.

Robert Hoover, Fort Worth, TX, Duke Hooten, Special Prosecuting Attorney, Austin, TX, Michael Broome, P.C. and Michael W. Broome, Hurst, TX, for Appellee.

Charla Moore, P.C. and Charla F. Moore, Arlington, TX, Attorney Ad Litem.

PANEL B: DAUPHINOT, HOLMAN, and McCOY, JJ.

## OPINION

DIXON W. HOLMAN, Justice.

Appellant Gary Wayne Stanfield seeks reversal of the trial court's agreed order terminating his parental rights and granting adoption to Gary Wayne Smith. We reverse and remand.

### FACTUAL AND PROCEDURAL BACKGROUND

Appellant and Appellee, parents of E.S.S., were divorced in 1995. In 1996, Appellee married Gary Wayne Smith and E.S.S. has lived with them since that time. Appellant is currently serving a life sentence in the Texas Department of Criminal Justice—Institutional Division (TDCJ–ID)

for murder. In August 2000, Appellee and Mr. Smith filed a petition for the involuntary termination of Appellant's parental rights in conjunction with a request by Mr. Smith to adopt E.S.S.

On July 30, 2002, the trial court held a trial on the petition for termination of Appellant's parental rights. Prior to the trial's commencement, the parties announced that they had reached an agreement. According to the terms of the agreement, Appellant would voluntarily relinquish his parental rights to E.S.S. in exchange for having his mother and brother named possessory conservators with visitation rights. After Appellee's attorney dictated the settlement agreement and details of the visitation rights on the record, Appellant testified that he was relinquishing his rights to E.S.S. as follows:

THE COURT: Okay. Mr. Stanfield, I want you to understand exactly what we're doing today. I think you know the purpose of this hearing is to determine whether or not your parental rights of this child should be terminated forever.

Now, it's my understanding that you're currently serving a life sentence in the [TDCJ–ID] for murder; is that correct?

THE DEFENDANT: Yes, sir.

THE COURT: You understand that even though you're under those circumstances at this time that you still have a right to have a trial in this matter, do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: Okay. Do you concur and agree that your parental rights to this child should be terminated forever?

THE DEFENDANT: Yes, sir.

THE COURT: All right. And are you doing that freely and voluntarily?

THE DEFENDANT: Yes, sir.

The trial court approved the agreement and ordered termination of Appellant's parental rights. Appellant thereafter did not sign an affidavit for voluntary relinquishment of parental rights.

On February 6, 2003, Appellee filed a motion for entry of an agreed order terminating Appellant's parental rights and granting adoption. Appellee's motion included a proposed agreed order, which not only included the terms of the agreement as stated on the record, but also an order granting adoption and the following findings:

The Court finds by clear and convincing evidence that GARY WAYNE STANFIELD has—

a. engaged in conduct or knowingly placed the child with persons who engaged in conduct that endangers the physical or emotional well-being of the child; and

b. knowingly engaged in criminal conduct that has resulted in his conviction of an offense and confinement or imprisonment and inability to care for the child for not less than two years from the date the petition was filed.

The Court also finds by clear and convincing evidence that termination of the parent-child relationship between GARY WAYNE STANFIELD and the child the subject of this suit is in the best interest of the child.

In response, Appellant did not sign the proposed agreed order and instead wrote a letter to the trial court seeking to revoke his consent to the agreement.

On February 28, 2003, a hearing was held on Appellee's motion for entry of the agreed order. Appellant claims that he again attempted to revoke his agreement to relinquish his parental rights and repudiate his agreement to the termination. At the conclusion of the hearing, the trial

court overruled Appellant's attempted revocation and signed the proposed agreed order. In five issues, Appellant argues that the trial court erred in signing the agreed order.

## STANDARD OF REVIEW

■ A parent's rights to "the companionship, care, custody, and management" of his or her children are constitutional interests "far more precious than any property right." *Santosky v. Kramer,* 455 U.S. 745, 758–59, 102 S.Ct. 1388, 1397, 71 L.Ed.2d 599 (1982). In a termination case, the State seeks not just to limit parental rights but to end them permanently—to divest the parent and child of all legal rights, privileges, duties, and powers normally existing between them, except for the child's right to inherit. TEX.FAM. CODE ANN. § 161.206(b) (Vernon Supp.2004); *Holick v. Smith,* 685 S.W.2d 18, 20 (Tex. 1985). We strictly scrutinize termination proceedings and strictly construe involuntary termination statutes in favor of the parent. *Holick,* 685 S.W.2d at 20–21; *In re D.T.,* 34 S.W.3d 625, 630 (Tex.App.-Fort Worth 2000, pet. denied) (op. on reh'g).

In proceedings to terminate the parent-child relationship brought under section 161.001 of the family code, the petitioner must establish one or more of the acts or omissions enumerated under subdivision (1) of the statute and must also prove that termination is in the best interest of the child. TEX.FAM. CODE ANN. § 161.001 (Vernon 2002); *Richardson v. Green,* 677 S.W.2d 497, 499 (Tex.1984); *Swate v. Swate,* 72 S.W.3d 763, 766 (Tex.App.-Waco 2002, pet. denied). Both elements must be established; termination may not be based solely on the best interest of the child as determined by the trier of fact. *Tex. Dep't of Human Servs. v. Boyd,* 727 S.W.2d 531, 533 (Tex.1987).

Termination of parental rights is a drastic remedy and is of such weight and gravity that due process requires the petitioner to justify termination by "clear and convincing evidence." TEX.FAM. CODE ANN. §§ 161.001, 161.206(a); *In re G.M.,* 596 S.W.2d 846, 847 (Tex.1980). This intermediate standard falls between the preponderance standard of ordinary civil proceedings and the reasonable doubt standard of criminal proceedings. *G.M.,* 596 S.W.2d at 847; *D.T.,* 34 S.W.3d at 630. It is defined as the "measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM.CODE ANN. § 101.007.

■ The higher burden of proof in termination cases alters the appellate standard of legal sufficiency review. *In re J.F.C.,* 96 S.W.3d 256, 265 (Tex.2002). The traditional no-evidence standard does not adequately protect the parent's constitutional interests. *Id.* In reviewing the evidence for legal sufficiency in parental termination cases, we must determine "whether the evidence is such that a factfinder could reasonably form a firm belief or conviction" that the grounds for termination were proven. *Id.* at 265–66. We must review all the evidence in the light most favorable to the finding and judgment. *Id.* at 266. This means that we must assume that the factfinder resolved any disputed facts in favor of its finding if a reasonable factfinder could have done so. *Id.* We must also disregard all evidence that a reasonable factfinder could have disbelieved. *Id.* We must consider, however, undisputed evidence even if it does not support the finding. *Id.* If we determine that no reasonable factfinder could form a firm belief or conviction that the grounds for termination were proven, then the evi-

dence is legally insufficient, and we must render judgment for the parent. *Id.*

 The higher burden of proof in termination cases also alters the appellate standard of factual sufficiency review. *In re C.H.,* 89 S.W.3d 17, 25 (Tex.2002). "[A] finding that must be based on clear and convincing evidence cannot be viewed on appeal the same as one that may be sustained on a mere preponderance." *Id.* In considering whether the evidence of termination rises to the level of being clear and convincing, we must determine "whether the evidence is such that a factfinder could reasonably form a firm belief or conviction" that the grounds for termination were proven. *Id.* Our inquiry here is whether, on the entire record, a factfinder could reasonably form a firm conviction or belief that the parent violated one of the conduct provisions of section 161.001(1) and that the termination of the parent's parental rights would be in the best interest of the child. *Id.* at 28. "When reversing on insufficiency grounds, the reviewing court must detail the evidence relevant to the issue of parental termination and clearly state why the evidence is insufficient to support a termination finding by clear and convincing evidence." *Id.* at 18.

 Nonexclusive factors that the trier of fact in a termination case may use in determining the best interest of the child include:

(1) the desires of the child;

(2) the emotional and physical needs of the child now and in the future;

(3) the emotional and physical danger to the child now and in the future;

(4) the parental abilities of the individuals seeking custody;

(5) the programs available to assist these individuals to promote the best interest of the child;

(6) the plans for the child by these individuals or by the agency seeking custody;

(7) the stability of the home or proposed placement;

(8) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and

(9) any excuse for the acts or omissions of the parent.

*Holley v. Adams,* 544 S.W.2d 367, 371–72 (Tex.1976). These factors are not exhaustive; some listed factors may be inapplicable to some cases; other factors not on the list may also be considered when appropriate. *C.H.,* 89 S.W.3d at 27. Furthermore, undisputed evidence of just one factor may be sufficient in a particular case to support a finding that termination is in the best interest of the children. *Id.* On the other hand, the presence of scant evidence relevant to each *Holley* factor will not support such a finding. *Id.*

### DISCUSSION

[10] In Appellant's first issue, he argues that the trial court erred in rendering judgment on the grounds of Appellant's relinquishment without a properly executed affidavit of relinquishment tendered to the court and offered as evidence.[1] The family code provides that the relinquishment of parental rights can be grounds for the termination of the parent-child relationship when the parent has "executed before or after the suit is filed an unrevoked or irrevocable affidavit of relinquish-

---

1. Although the trial court's judgment at trial was clearly based on Appellant's oral relinquishment of his parental rights, we note that the resulting agreed order does not include a finding that Appellant relinquished his parental rights nor does it indicate that the decision was based on Appellant's oral relinquishment.

ment of parental rights as provided by this chapter." TEX. FAM.CODE ANN. § 161.001(1)(K). Under section 161.103(a) of the family code, a valid affidavit of voluntary relinquishment must be 1) signed, 2) witnessed by two credible persons, and 3) verified before a person authorized to take oaths. *Id.* § 161.103(a) (Vernon Supp.2004). Appellant points out that there is no statutory provision that an oral relinquishment will suffice to comply with the strict requirements of section 161.103. Further, we find no common law authority allowing acceptance of an oral relinquishment in lieu of a signed affidavit.

Even if an oral statement on the record in open court would sufficiently meet the requirements set forth in 161.103(a), Appellant's oral statements at trial do not encompass the laundry list of information that must be included in an affidavit of voluntary relinquishment as set forth in 161.103(b). Subsection (b) lists several requirements that are not encompassed in Appellant's oral relinquishment. The reporter's record for the trial on the termination of Appellant's parental rights does not contain the following required information:

(1) the address and age of the parent whose parental rights are being relinquished;

(2) the age, and birth date of the child;

(3) the names and addresses of the guardians of the person and estate of the child, if any;

(4) a statement that the affiant is or is not presently obligated by court order to make payments for the support of the child;

(5) a full description and statement of value of all property owned or possessed by the child;

(6) an allegation that termination of the parent-child relationship is in the best interest of the child;

(7)(A) the name and address of the other parent;

(8) a statement that the parent has been informed of parental rights and duties;

(9) a statement that the relinquishment is revocable, that the relinquishment is irrevocable, or that the relinquishment is irrevocable for a stated period of time;

(10) if the relinquishment is revocable, a statement in boldfaced type concerning the right of the parent signing the affidavit to revoke the relinquishment only if the revocation is made before the 11th day after the date the affidavit is executed;

(11) if the relinquishment is revocable, the name and address of a person to whom the revocation is to be delivered.

*See id.* § 161.103. We sustain Appellant's first issue.

In Appellant's second and third issues, he asserts that the trial court erred in granting termination based solely on evidence of the parties' agreement and without evidence or a finding that termination was in the best interest of E.S.S. We construe Appellant's argument to be that the evidence is factually and legally insufficient to support the termination of his parental rights.

The trial court's order includes findings that Appellant's conduct fell within two of the enumerated grounds for involuntary termination under section 161.001 of the family code. First, the court found that Appellant engaged in conduct or knowingly placed the child with persons who engaged in conduct that endangers the physical or emotional well-being of the child. *See id.* § 161.001(1)(E). Section 161.001(1)(E) requires us to look at the parent's conduct alone, including actions or omissions or failures to act. *See id.; D.T.,* 34 S.W.3d at 634; *In re R.F.,* 115 S.W.3d 804, 810 (Tex.App.-Dallas 2003, no pet.).

"Endanger" under section 161.001(1)(E) means to expose to loss or injury, to jeopardize. *Boyd,* 727 S.W.2d at 533; *D.T.,* 34 S.W.3d at 634. The term means more than a threat of "metaphysical injury," but it is not necessary that the conduct be directed at the child or that the child actually suffer injury. *Boyd,* 727 S.W.2d at 533. Nevertheless, there must be evidence of endangerment to the child's physical or emotional well-being as the direct result of the parent's conduct. *In re J.B.W.,* 99 S.W.3d 218, 226 (Tex.App.-Fort Worth 2003, pet. denied); *In re R.D.,* 955 S.W.2d 364, 367 (Tex.App.-San Antonio 1997, pet. denied). Additionally, termination under section 161.001(1)(E) must be based on more than a single act or omission; a voluntary, deliberate, and conscious "course of conduct" by the parent is required. *J.B.W.,* 99 S.W.3d at 226; *D.T.,* 34 S.W.3d at 634.

Here, the evidence in support of a finding that Appellant engaged in a course of conduct that endangers the physical or emotional well-being of E.S.S. is a single statement regarding Appellant's prison sentence for murder. Texas cases have considered the involuntary termination of the rights of an imprisoned parent, and have held that mere imprisonment will not, standing alone, constitute engaging in conduct which endangers the emotional or physical well-being of a child. *See Boyd,* 727 S.W.2d at 533–34 (holding imprisonment alone is not conduct endangering a child); *In re C.L.C,* 119 S.W.3d 382, 397 (Tex.App.-Tyler 2003, no pet.); *In re S.D.H.,* 591 S.W.2d 637, 638 (Tex.Civ.App.-Eastland 1979, no writ) (holding imprisonment alone is not conduct endangering a child). Therefore the only evidence before us, Appellant's admission that he is serving a life sentence in prison, cannot support a termination on endangerment grounds under section 161.001(1)(E).

The court's second finding in favor of terminating Appellant's parental rights is based on section 161.001(1)(Q), which requires proof that Appellant:

(Q) knowingly engaged in criminal conduct that has resulted in the parent's:

(i) conviction of an offense; and

(ii) confinement or imprisonment and inability to care for the child for not less than two years from the date of filing the petition.

TEX. FAM.CODE ANN. § 161.001(1)(Q). Although Appellant admitted that he is currently serving a prison term that will exceed two years, there is no evidence that Appellant is unable to care for E.S.S. Proof that Appellant is unable to care for E.S.S. is an additional requirement not met by showing incarceration alone. *In re B.M.R.,* 84 S.W.3d 814, 818 (Tex.App.-Houston [1st Dist.] 2002, no pet.); *see In re Caballero,* 53 S.W.3d 391, 395 (Tex. App.-Amarillo 2001, pet. denied). Otherwise, the termination of parental rights could become an additional punishment automatically imposed along with imprisonment for almost any crime. *In re D.R.L.M.,* 84 S.W.3d 281, 294 (Tex.App.-Fort Worth, pet. denied); *D.T.,* 34 S.W.3d at 636; *see also Holick,* 685 S.W.2d at 20–21 (stating we are required to strictly construe the involuntary termination statutes in favor of the parent).

In *In re Caballero,* the Amarillo Court of Appeals construed section 161.001(1)(Q) as requiring a three-step process. 53 S.W.3d at 396. First, the party seeking termination must establish that the parent's knowing criminal conduct resulted in incarceration for more than two years. *Id.* Second, the parent must produce some evidence as to how he would provide or arrange to provide care for the child during that period. *Id.* Finally, the party seeking termination would then have the

burden of persuasion that the arrangement would not satisfy the parent's duty to the child. *Id.*

We conclude that Appellant's statement at trial regarding his prison term is sufficient to establish Appellee's initial burden to prove that Appellant is incarcerated for more than two years. Likewise, Appellant met his burden of production regarding how he would arrange for the care of E.S.S. in that the agreement reached by the parties included naming Appellant's mother and brother possessory conservators with visitation rights. Appellee consequently had the burden of persuasion to establish that this arrangement would not meet Appellant's duty to E.S.S. Because no evidence was presented by Appellee regarding Appellant's plan to care for E.S.S., Appellee has not met her burden of persuasion. *See id.* Consequently, the evidence is insufficient to establish that Appellant's conduct falls within the grounds for involuntary termination enumerated in subsection Q. We also conclude that the scant evidence before us cannot support a finding of best interest. Of the nine previously mentioned *Holley* factors that may be used in determining the best interest of the child, the record before us sheds light on only one factor—whether the acts or omissions of the parent indicate that the existing parent-child relationship is not a proper one. *See Holley,* 544 S.W.2d at 371–72. A single statement on ·the record regarding Appellant's prison term without weighing any other factors is not sufficient to support a best interest finding by clear and convincing evidence. *See C.H.,* 89 S.W.3d at 27. We sustain Appellant's second and third issues.

■■ In Appellant's fourth issue, he asserts that the trial court erred in entering judgment because Appellant revoked his oral agreement to relinquish his parental rights prior to the entry of the order. Appellant's fifth and final issue takes the position that the trial court did not have authority to enter an agreed order based on grounds which were different from the parties' Rule 11 agreement.[2] Because we conclude that the agreement is unenforceable, we do not address whether the Appellant properly revoked his agreement or whether the agreed order is in compliance with the parties' Rule 11 agreement.

■■ While people are generally free to contract, contracts which violate public policy as captured in statutory mandate are unenforceable. *Williams v. Patton,* 821 S.W.2d 141, 147–48 (Tex.1991) (orig. proceeding) (Doggett, J., concurring). Furthermore, a Rule 11 agreement is nothing more than a contract that satisfies the terms of Rule 11 of the Texas Rules of Civil Procedure. *In re T.M.,* 33 S.W.3d 341, 347 (Tex.App.-Amarillo 2000, no pet.). It too is regulated by laws pertaining to contracts in general and is therefore unenforceable if it violates public policy. *See Padilla v. LaFrance,* 907 S.W.2d 454, 460–61 (Tex.1995); *Alcantar v. Okla. Nat'l Bank,* 47 S.W.3d 815, 819 (Tex.App.-Fort Worth 2001, no pet.); *T.M.,* 33 S.W.3d at 347. The family code expressly states that:

The public policy of this state is to:

(1) assure that children will have frequent and continuing contact with parents who have shown the ability to act in the best interest of the child;

(2) provide a safe, stable, and nonviolent environment for the child; and

(3) encourage parents to share in the rights and duties of raising their child after the parents have separated or dissolved their marriage.

**2.** *See* TEX.R. CIV. P. 11.

TEX. FAM.CODE ANN. § 153.001(a) (Vernon 2002).

Here, the Rule 11 agreement does not comply with the required findings for termination under the family code. The relevant evidence on the record consists only of Appellant's statement that he is in prison for murder and his statement that he would relinquish his parental rights in exchange for naming his mother and brother possessory conservators. This alone does not establish by clear and convincing evidence that termination is in the best interest of E.S.S. or that any of the statutory grounds for termination in the family code were met. Given the clear public policy encompassed within sections 153.001 and 161.001 of the family code, we conclude that the agreement in this case is unenforceable. *See T.M.*, 33 S.W.3d at 347. We sustain Appellant's fifth issue.

### CONCLUSION

From the record, it is apparent that the trial court did not proceed with a trial on the merits of Appellee's petition for involuntary termination of Appellant's parental rights in reliance on the settlement agreement reached between the parties. Because we find the agreement unenforceable, we reverse the judgment of the trial court and remand for a new trial on the merits. *See* TEX.R.APP. P. 43.3(b).