**In the Interest of H.R.M.**

**No. 14–05–00281–CV.**

Court of Appeals of Texas, Houston (14th Dist.).

Feb. 14, 2006.

Shannon Tigner, Angleton, for appellants.

Kelly McClendon, Angleton, for appellees.

Panel consists of Justices YATES, HUDSON, and SEYMORE.

## MAJORITY OPINION

CHARLES W. SEYMORE, Justice.

Appellant, William Keith M. ("Keith"), appeals from an order terminating his parental rights to his daughter, H.R.M. Because we conclude the evidence is factually insufficient to support termination of Keith's parental rights on the only ground alleged in the petition for termination, we reverse and remand for a new trial.

## I. BACKGROUND

Keith and Stacey W. ("Stacey") are the natural parents of H.R.M., who was born on October 13, 2000. Keith and Stacey married in December 2000. In September 2001, Keith and Stacey entered into an agreed divorce decree, under which Stacey was appointed sole managing conservator of H.R.M., and Keith was appointed possessory conservator with the right to supervised visitation. Since January 2002, Keith has been incarcerated in the Texas Department of Criminal Justice, serving concurrent sentences for robbery and enticing a child.

In May 2004, Stacey married James W. ("James"). On July 6, 2004, Stacey and James, appellees, filed a petition seeking termination of Keith's parental rights and James's adoption of H.R.M.[1] The sole ground alleged for termination was that Keith "knowingly engaged in criminal con-

duct that has resulted in his conviction of an offense and confinement or imprisonment and inability to care for [H.R.M.] for not less than two years from the date this petition is filed." [2]

Trial was to a jury, which found, in a ten-to-two verdict, that Keith's parental rights should be terminated. The trial court subsequently entered an order terminating Keith's parental rights but reserved a ruling on James's request to adopt H.R.M. Keith then filed a motion for new trial, which the trial court denied by written order.

On appeal, Keith raises the following three issues: (1) whether his trial counsel's performance was so highly deficient Keith was deprived of effective assistance of counsel; (2) whether the evidence is factually insufficient to support a finding Keith was going to be incarcerated and fail to provide for the care of H.R.M. for two years from the date of the filing of the termination petition; and (3) whether Keith provided for the care of H.R.M. by leaving her with Stacey. Because we conclude the evidence is factually insufficient to support a finding Keith was going to be confined or imprisoned for two years from the date of the petition, we sustain Keith's second issue and do not address his first and third issues.

## II. STANDARD OF REVIEW

██ In parental termination cases, the party seeking termination bears the burden of proving its case by clear and convincing evidence. TEX. FAM. CODE ANN. § 161.001 (Vernon Supp.2005); *In re J.F.C.*, 96 S.W.3d 256, 263 (Tex.2002); *In*

---

1. When referring to Stacey or James individually, we use the person's first name; when referring to both of them, we use "the appellees."

2. *See* TEX. FAM. CODE ANN. § 161.001(1)(Q) (Vernon Supp.2005).

*re J.I.T.P.*, 99 S.W.3d 841, 843 (Tex.App.-Houston [14th Dist.] 2003, no pet.). "'Clear and convincing evidence' means the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE ANN. § 101.007 (Vernon 2002); *In re J.F.C.*, 96 S.W.3d at 264; *In re J.I.T.P.*, 99 S.W.3d at 843.

■ When reviewing factual sufficiency under this heightened standard, we determine "whether the evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth of the [petitioner's] allegations." *In re J.F.C.*, 96 S.W.3d at 266; *see In re J.I.T.P.*, 99 S.W.3d at 844. We consider whether disputed evidence is such that a reasonable factfinder could not have resolved that disputed evidence in favor of its finding. *In re J.F.C.*, 96 S.W.3d at 266; *In re J.I.T.P.*, 99 S.W.3d at 844. "If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *In re J.F.C.*, 96 S.W.3d at 266; *In re J.I.T.P.*, 99 S.W.3d at 844.

■ The natural right between parents and their children is one of constitutional dimension. *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex.1985); *In re U.P.*, 105 S.W.3d 222, 229 (Tex.App.-Houston [14th Dist.] 2003, pet. denied). Therefore, a court should strictly scrutinize termination proceedings, and strictly construe the involuntary termination statutes in favor of the parent. *Holick*, 685 S.W.2d at 20; *In re U.P.*, 105 S.W.3d at 229.

## III. TERMINATION UNDER SECTION 161.001(1)(Q)

■ Before a trial court may terminate the parent-child relationship, there must be clear and convincing evidence (1) the parent committed one of the acts enumerated in section 161.001(1) of the Texas Family Code, and (2) termination is in the best interest of the child. TEX. FAM. CODE ANN. § 161.001; *In re J.I.T.P.*, 99 S.W.3d at 844. In the present case, the appellees alleged Keith had committed the conduct set forth in subsection (1)(Q). The jury found Keith had committed that conduct and also termination was in H.R.M.'s best interest.[3] Keith contends the evidence is factually insufficient to support the finding relative to section 161.001(1)(Q), but he does not challenge the "best interest" finding.

Section 161.001(1)(Q) provides grounds for termination if the parent has "knowingly engaged in criminal conduct that has resulted in the parent's: (i) conviction of an offense; and (ii) confinement or imprisonment and inability to care for the child for not less than two years from the date of filing the petition." TEX. FAM. CODE ANN. § 161.001(1)(Q) (Vernon Supp.2005). Subsection (1)(Q) is to be read prospectively. *In re A.V.*, 113 S.W.3d 355, 360 (Tex.2003). Thus, subsection (1)(Q) allows termination when the parent will be confined or imprisoned and unable to care for the child for at least two years *after* termination proceedings begin. *See id.* at 360–61.

■ Incarceration alone does not justify termination. *In re E.S.S.*, 131 S.W.3d 632,

---

3. In a single broad-form question, the jury was asked whether the parent-child relationship should be terminated. The jury, however, was instructed, for the parent-child relation to be terminated in this case, it must be proved by clear and convincing evidence that Keith violated section 161.001(1)(Q) and that termination would be in H.R.M.'s best interest.

639 (Tex.App.-Fort Worth 2004, no pet.); *In re B.M.R.*, 84 S.W.3d 814, 818 (Tex. App.-Houston [1st Dist.] 2002, no pet.); *In re Caballero*, 53 S.W.3d 391, 395 (Tex. App.-Amarillo 2001, pet. denied) (citing *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex.1987)).[4] Otherwise, termination of parental rights could become an additional punishment automatically imposed along with imprisonment for almost any crime. *In re E.S.S.*, 131 S.W.3d at 639. The petitioner must also show the parent's inability to care for the child for at least two years from the date of filing the petition. *Id.; In re B.M.R.*, 84 S.W.3d at 818. Therefore, incarceration and inability to care are separate requirements for termination under section 161.001(1)(Q). *See In re E.S.S.*, 131 S.W.3d at 639; *In re B.M.R.*, 84 S.W.3d at 818.

In the present case, Keith contends the evidence is factually insufficient to support the finding he will be incarcerated for at least two years after the date the petition was filed *and* the finding he will be unable to care for H.R.M. for at least two years after the date the petition was filed.[5] We conclude the evidence is factually insufficient to support a finding he will be confined or imprisoned for at least two years after the date the petition was filed and do not reach the element of inability to care.

At trial, as they do on appeal, appellees relied on the following evidence to prove Keith will be confined or imprisoned until at least July 6, 2006, *i.e.*, two years after appellees filed their petition:

- a twenty-five year sentence imposed on Keith in February 1996;[6]
- a seven year sentence imposed on Keith in October 2002, to run concurrently with the twenty-five year sentence;[7] and
- Keith's testimony that, at the time of trial in January 2005, he had "a little less than 13 left" on the twenty-five year sentence.

From this evidence, appellees argue, "At the time of trial, [Keith] still had thirteen years of confinement remaining. This evidence is sufficient to establish confinement or imprisonment for a period of two years from the date of the filing of the petition." Appellees also state, "No evidence was adduced to indicate he would be released earlier." Thus appellees rely solely on the length of the Keith's sentence as clear and convincing evidence he would be confined or imprisoned on July 6, 2006.

Appellees acknowledge Keith testified he would have a parole hearing the following June. Nevertheless, they follow this acknowledgment with the statement that Keith "did not testify he would be paroled," and a citation to *In re B.M.R.*, in

---

4. In *Boyd*, the court did not address termination under section 161.001(1)(Q). *See Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 532–34 (Tex.1987). Rather, the court addressed termination on a different statutory ground—whether the parent engaged in conduct which endangers the emotional or physical well-being of a child. *See id.* The court held mere imprisonment, standing alone, will not establish endangerment. *Id.* at 533. In *In re Caballero*, the court concluded this principle is equally applicable when considering termination under section 161.001(1)(Q). *See In re Caballero*, 53 S.W.3d 391, 395 (Tex.App.-Amarillo 2001, pet. denied).

5. Keith admits that he has knowingly engaged in criminal conduct that has resulted in conviction of an offense.

6. In the judgment for "Robbery–Enhanced," dated February 7, 1992, the court imposed a twenty-five year sentence, with "131 days from date of sentence" as time credited.

7. In the judgment for enticing a child, dated October 21, 2002, the court imposed a seven year sentence with "279 days credit from date of sentence."

which the appellate court rejected the appellant's factual sufficiency challenge. *In re B.M.R.*, 84 S.W.3d at 818. In *In re B.M.R.*, however, the appellant had testified the earliest he could be released was February 2003, which was more than two years from the date of the relevant petition. *Id.* at 817. As characterized by the appellate court,

> [T]he only evidence suggesting an earlier date was (1) appellant's testimony that he had told his other children he was coming home within two years and (2) a June 2000 letter from appellant to Veronica that stated, "I should be home by Feb. 2003, although there is a chance I could be home within a year." No further elaboration was provided about how appellant could be home within a year.

*Id.* at 818.

In contrast, Keith's testimony he had thirteen years remaining referred to the length of his sentence, not his earliest release date. Additionally, Keith testified not only that he had a parole hearing the forthcoming June, but that he had signed up for a pre-release course, which required the participants to be within two years of parole and he should complete the course in May, when he returned. This evidence was uncontroverted. On cross-examination, Keith testified there was no assur-

ance he would be granted or denied parole.[8] Nevertheless, he also testified that in his fifteen years in the Texas Department of Corrections, he had "never had a case doing any wrongdoings," and affirmed "from previous appearances in [sic] parole board in other cases," the timing was right for him to be released.[9] This evidence, too, was uncontroverted.

Appellate courts analyzing the sufficiency of the evidence on the element of incarceration two years from the date of the petition usually refer to evidence of the projected release date, rather than evidence of the length of the sentence alone. *See, e.g., In re D.J.J.*, 178 S.W.3d 424, 428 (Tex.App.-Fort Worth 2005, no pet.) (holding, in context of deciding ineffective assistance of counsel issue, evidence was legally insufficient when appellant, at time of trial, was serving four concurrent five year sentences, but it was undisputed there was no evidence regarding when he would be released from prison); *In re R.F.*, 89 S.W.3d 258, 260 (Tex.App.-Corpus Christi 2002, no pet.) (holding evidence legally insufficient when appellant began serving a nine year sentence in August 1999, the petition was filed in July 2001, and the only evidence of when appellant would be released was a letter in which he stated he hoped to be released in May 2003); *see also In re*

---

8. Appellees elicited the following testimony on cross-examination:

> Q. How many times have you been up for parole on your 25-year sentence?
> A. This is my third time coming up on my violation.
> Q. There's no assurance that you'll be granted parole; is there?
> A. There's no assurance that I'll be denied.
> Q. But there's no assurance that you'll be granted parole; is that correct?
> A. Right.
> Q. And if your parole was not granted, then when would you come up for parole again?

> A. June of 2005[sic].
> Q. You come up every year?
> A. Yes.

9. Thus, the present case is also distinguishable from *In re K.R.M.*, in which the appellate court rejected the appellant's factual sufficiency challenge despite appellant's testimony he was scheduled for a parole hearing and could be released within four months of trial. 147 S.W.3d 628, 630 (Tex.App.-San Antonio 2004, no pet.) In *In re K.R.M.*, the appellant admitted he had been subjected to disciplinary actions while in prison and had been denied early release on three previous occasions. *Id.*

*E.A.G.,* No. 09–04–365–CV, 2005 WL 1038723, at *2 (Tex.App.-Beaumont May 5, 2005, no pet.) (mem.op.) (referring to mandatory release date). *But see In re J.C.,* 151 S.W.3d 284, 289 (Tex.App.-Texarkana 2004, no pet.) (rejecting factual sufficiency challenge when State had to prove appellant would be incarcerated until March 27, 2004, appellant's convictions became final August 9, 2001, State submitted final convictions, for which appellant was sentenced to ten years, and there was nothing to show appellant not still incarcerated during appeal, more than two years after the petition was filed). The approach of looking to evidence of release date, rather than length of sentence, is consistent with the statutory language which "focuses on the parent's future imprisonment and inability to care for the child, not the criminal conduct that the parent committed in the past." *In re A.V.,* 113 S.W.3d at 360.[10]

In the present case, the only evidence Keith will still be in prison or confined on July 6, 2006, are the judgments of conviction and sentences and Keith's testimony that, as of January 2005, he still had thirteen years left on his sentence. Even if we consider sentence length as *some* evidence of probable release date,[11] a reasonable factfinder could not have resolved the following uncontroverted evidence as supporting a finding Keith would still be imprisoned or confined on July 6, 2006: Keith's testimony he had two parole hearings before that date; his testimony he had signed up for a program available only to prisoners within two years of release and would be completing the program in May 2005; and his testimony he had committed "no wrongdoings" while in prison. In light of the entire record, we conclude a factfinder could not have reasonably formed a *firm* belief or conviction Keith would still be imprisoned or confined as of

10.  The dissent quotes *In re A.V.* to support its conclusion that evidence of the date of conviction and a sentence length of over two years from the petition date is sufficient to meet the petitioner's burden of proof. Dissenting op. at 2 (quoting *In re A.V.,* 113 S.W.3d 355, 360 (Tex.2003)). The quoted sentence, however, appears in the context of the supreme court's interpreting the two-year period in subsection Q to apply prospectively, an interpretation the supreme court acknowledged could lead to incarcerated parents raising the possibility of early parole. *See In re A.V.,* 113 S.W.3d at 359.

The dissent also cites *In re E.S.S.* in support of its conclusion. Dissenting op. at 1–2 (citing *In re E.S.S.,* 131 S.W.3d 632, 639–40 (Tex.App.-Fort Worth 2004, no pet.)). In *In re E.S.S.,* the Fort Worth Court of Appeals ultimately held the evidence was insufficient to support termination of the appellant/father's parental rights under subsection Q:

We conclude that Appellant's statement at trial regarding his prison term [his admission he is serving a life sentence] is sufficient to establish Appellee's initial burden to prove that Appellant is incarcerated for more than two years. Likewise, Appel-

lant met his burden of production regarding how he would arrange for the care of E.S.S. in that the agreement reached by the parties included naming Appellant's mother and brother possessory conservators with visitation rights. Appellee consequently had the burden of persuasion to establish that this arrangement would not meet Appellant's duty to E.S.S. Because no evidence was presented by Appellee regarding Appellant's plan to care for E.S.S., Appellee has not met her burden of persuasion. Consequently, the evidence is insufficient to establish that Appellant's conduct falls within the grounds for involuntary termination enumerated in subsection Q.

131 S.W.3d at 640 (citation omitted). In short, evidence regarding length of incarceration was clearly not determinative of the appellate court's resolution of the case. Also, unlike the present case, there is no indication E.S.S.'s father (who was serving a life sentence) introduced evidence of a possible release date.

11.  Because Keith is not challenging the legal sufficiency of the evidence, we need not reach this question.

July 6, 2006. *See In re J.F.C.*, 96 S.W.3d at 266; *see In re J.I.T.P.*, 99 S.W.3d at 844.

We sustain Keith's second issue.

## IV. CONCLUSION

Having sustained Keith's second issue, we reverse the order terminating his parental rights and remand for a new trial. Because of our disposition of Keith's second issue, we need not address his first and third issues.

LESLIE BROCK YATES, J., dissenting.

I respectfully disagree with the majority's conclusion that the evidence is factually insufficient to support a finding that Keith will be imprisoned for at least two years from the date the petition was filed. Typically, evidence showing the date of conviction and a sentence length over two years from the petition date is sufficient to meet the petitioner's burden of proof. *See In re J.C.*, 151 S.W.3d 284, 289 (Tex.App.-Texarkana 2004, no pet.) (finding evidence of conviction date and sentence length sufficient to prove incarceration for two years from petition date); *In re E.S.S.*, 131 S.W.3d 632, 639–40 (Tex.App.-Fort Worth 2004, no pet.) (concluding that father's trial statement that he was currently serving a prison term to exceed two years sufficient to prove incarceration for two years); *see also In re A.V.*, 113 S.W.3d 355, 360 (Tex. 2003) ("[I]f the parent is convicted and sentenced to serve at least two years and will be unable to provide for his or her child during that time, the State may use subsection Q to ensure that the child will not be neglected.").

I disagree with the cases cited by the majority that require a petitioner also to prove when the incarcerated parent will be released, particularly when parole is at issue. The grant or denial of parole lies within the parole board's discretion and is thus inherently uncertain. A parent's hope of early release is merely speculative. *See In re K.R.M.*, 147 S.W.3d 628, 630 (Tex.App.-San Antonio 2004, no pet.) ("[Appellant]'s hope that he might be granted early release is pure speculation."); *In re B.M.R.*, 84 S.W.3d 814, 817–18 (Tex.App.-Houston [1st Dist.] 2002, no pet.) (holding that father's comments to family members that he could be coming home early did not render evidence insufficient to prove incarceration for two years). This case aptly demonstrates this point. Keith has been denied parole twice before but nonetheless believed this time that he would be released based on his past experience with the parole board in other cases, his lack of any "wrongdoings" in prison, and his scheduled completion of a pre-release course. Though he may have had high hopes, Keith admitted there was no assurance he would be granted parole. I conclude that Keith's optimism does not render insufficient appellees' evidence regarding the length of his incarceration.