Affirmed and Memorandum Opinion on Remand filed March 8, 2007








Affirmed and Memorandum Opinion on Remand filed March 8, 2007.

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-05-00281-CV

____________

 

 

IN THE INTEREST OF H.R.M.

 

 



 

On Appeal from the 300th
District Court

Brazoria County, Texas

Trial Court Cause No. 29559

 



 

M E M O R A N D U M   O P I N I O N   O N  R E M A N D

This case is on remand from the Texas Supreme Court for
consideration of a single issue.  The issue is whether the evidence is
factually sufficient to support the jury=s finding that the
parental rights of William Keith M. [AKeith@] to his
biological daughter, H.R.M., should be terminated under Texas Family Code
Section 161.001(1)(Q), which provides Aparental rights
may be terminated if the parent has >knowingly engaged
in criminal conduct that has resulted in the parent=s:  (i) conviction
of an offense; and (ii) confinement or imprisonment and inability to care for
the child for not less than two years from the date of filing the petition.=@ 








See
In re H.R.M., 209 S.W.3d 105, 107 (Tex. 2006) (per curiam) (quoting Tex. Fam. Code Ann. ' 161.001(1)(Q)).[1]

A divided panel of this court initially determined the
evidence was factually insufficient because, despite evidence of how much time
remained on Keith=s sentences, the uncontroverted evidence
of where Keith was in the parole process was such that there was insufficient
evidence from which a factfinder could Ahave reasonably
formed a firm belief or conviction Keith would still be imprisoned or
confined@ two years after
the petition for termination was filed.  See In re H.R.M., No.
14-05-00281-CV, 2006 WL 1147806, at *4 (Tex. App.CHouston [14th
Dist] Feb. 14, 2006), rev=d per curiam, 209 S.W.3d 105
(Tex. 2006).  Accordingly, we reversed and remanded the case for a new trial.  See
id. at *1.  Following the supreme court=s direction on how
a reviewing court should analyze evidence of an inmate=s status in the
parole process, we now affirm in this memorandum opinion.  See Tex. R. App. P. 47.4.

The factual and procedural background and the standard of
review are set forth in the previous two opinions in this case.  See In
re H.R.M., 209 S.W.3d at 108; In re H.R.M.,  2006 WL 1147806, at *1.[2] 
We do not repeat them here.  In this opinion, we refer to H.R.M.=s biological
mother as AStacey.@








Subsection
(1)(Q) allows termination when the parent will be confined or imprisoned and
unable to care for the child for at least two years after termination
proceedings begin.  Tex. Fam. Code Ann. ' 161.001(1)(Q)
(Vernon Supp. 2006); see In re A.V., 113 S.W.3d 355, 360B61 (Tex. 2003).[3] 
Incarceration and inability to care are separate requirements for termination under
section 161.001(1)(Q).  See In re E.S.S., 131 S.W.3d 632, 639
(Tex. App.CFort Worth 2004, no pet.); In re B.M.R., 84
S.W.3d 814, 818 (Tex. App.CHouston [1st Dist.] 2002, no pet.).

Evidence regarding incarceration.  The following
evidence supports the jury=s determination Keith would be confined on
July 6, 2006, two years after the petition was filed on July 6, 2004:

$        a twenty-five year sentence
imposed on Keith in February 1996;[4]

 

$        a seven-year sentence
imposed on Keith in October 2002, to run concurrently with the twenty-five year
sentence;[5]
and

 

$        Keith=s testimony that, at the time of
trial in January 2005, he had A[a] little less than 13@ left on the twenty-five year sentence.

 

The record also
contains the following uncontroverted evidence of Keith=s status in the
parole process:

$        Keith=s testimony he had two parole
hearings before July 6, 2006;

 

$        Keith=s testimony he had signed up for a
pre-release program available only to prisoners within two years of parole and
would be completing the program in May 2005; and

 








$        Keith=s testimony he had committed no Awrongdoings@ while in prison.[6]

 

$        Keith=s affirmation that
from Aprevious
appearances in parole board in other cases,@ the timing was
right for him to be released. 

 

 

 

Nevertheless, A[m]ere
introduction of parole‑related evidence . . . does not prevent a
factfinder from forming a firm conviction or belief that the parent will remain
incarcerated for at least two years.@  In re H.R.M.,
209 S.W.3d at 109.   As the supreme court further explained, AParole decisions
are inherently speculative, and while all inmates doubtless hope for early
release and can take positive steps to improve their odds, the decision rests
entirely within the parole board=s discretion.@  Id.
(citations omitted).  The supreme court also referred to Keith=s concession that
release within two years was A>up to the parole
board,=@ and his
acknowledgment the parole board had previously twice denied parole in his
case.  Id.  Finally, the supreme court observed that the jury was free to
disregard Keith=s testimony.  Id.  Accordingly, we
conclude the evidence is factually sufficient for the jury to have reasonably
formed a firm belief that Keith would remain imprisoned or confined on July 6,
2006.

Evidence regarding
inability to care for H.R.M.   A[F]actors to be
considered when deciding inability to care include the availability of
financial and emotional support from the incarcerated parent.@  Brazoria
County Children=s Protective Servs. v. Frederick, 176 S.W.3d  277,
279 (Tex. App.CHouston [1st Dist.] 2004, no pet.).  The following
evidence supports the jury=s finding Keith was unable to care for
H.R.M. for at least two years after the termination proceedings began:








$        Keith=s testimony he had fathered four
children in addition to H.R.M., three of whom were the same age, but born to
different mothers, and Keith had paid no child support for any of these children
since October 2002;[7]

 

$        Stacey=s testimony indicating Keith was
only minimally employed when not incarcerated;

 

$        Testimony from H.R.M.=s godmother that Keith, in his
current situation, cannot be a role model and from Stacey=s mother that Keith does not have
the ability to care for a young female child; and

 

$        Testimony indicating Keith=s letter writing to H.R.M.
increased only after Stacey=s husband informed Keith he wanted to adopt H.R.M.

 

Keith, however,
points to the following evidence as supporting his ability to care for H.R.M.:

 

$        Keith=s testimony that, for the first
year or so of H.R.M.=s life, he was involved in H.R.M.=s care and upbringing, was H.R.M.=s primary care-giver,  and provided
$306.00 per week from a workman=s compensation recovery;

 

$        Keith=s testimony that, when he was not
incarcerated, he did everything he could to take care of his children;

 

$        Keith=s testimony that he tried to
support H.R.M. by paying child support, but the attorney general=s office did not have a listing of
his owing any support; and

 

$        Evidence Keith sent letters
and a Bible cover to H.R.M. while Keith was in prison.

 








AAs >the sole arbiter
when assessing the credibility and demeanor of witnesses,=@ however, Athe jury was free
to disregard Keith=s testimony.@  In re H.R.M.,
209 S.W.3d at 109 (quoting In re J.L., 163 S.W.3d 79, 86B87 (Tex. 2005)).

Lastly, Keith
points to his testimony that he could ask his mother for help and support if
necessary.  Once the petitioner has established a parent=s knowing criminal
conduct resulted in his incarceration or confinement for more than two years,
the incarcerated or confined parent must produce some evidence showing how he
would provide or arrange to provide care for the child during that period.  See
In re Caballero, 53 S.W.3d 391, 396 (Tex. App.CAmarillo 2001,
pet. denied).  If the parent meets this burden, the petitioner would then have
the burden to prove the arrangement would not satisfy the parent=s duty to the
child.  See id.[8] 
In the present case, however, there is no evidence Keith=s mother or any of
his other family members were willing to care for H.R.M. on Keith=s behalf during
his incarceration.  See id. (stating, because incarcerated parent failed
to present any evidence regarding availability of someone else to take care of
child during parent=s incarceration, the trial court=s finding in that
regard could not be against overwhelming weight of evidence); In re C.E.V.,
No. 09‑03‑468-CV, 2004 WL 1902537, at *3 (Tex. App.CBeaumont Aug. 26,
2004, pet. denied) (mem. op.) (concluding trial court=s finding that
incarcerated parent=s conviction resulted in his inability to
care for child was supported by clear and convincing evidence when incarcerated
parent did not refer court to any evidence his mother could and would provide
care for child during his incarceration and petitioners had no burden to
disprove mother=s capacity to care for child).








After weighing all
of the evidence, we conclude the evidence is factually sufficient for the jury
to have reasonably formed a firm belief that Keith would be unable to care for
H.R.M.  Having determined there was factually sufficient evidence to support
both requirements of Section 161.001(1)(Q), we conclude the evidence was
factually sufficient to support the jury=s finding that
Keith=s parental rights
to his biological daughter, H.R.M., 

should be terminated. 
Accordingly, we affirm the judgment of the trial court.

 

 

 

 

/s/      Charles Seymore

Justice

 

 

 

 

Judgment rendered
and Memorandum Opinion on Remand filed March 8, 2007.

Panel consists of
Justices Yates, Hudson, and Seymore.









[1]  Keith raised the following two additional issues: 
whether his trial counsel=s performance was so highly deficient Keith was
deprived of effective assistance of counsel; and whether Keith provided for the
care of H.R.M. by leaving her with Stacey, H.R.M.=s biological mother.  In re H.R.M., No. 14-05-00281-CV, 2006 WL
1147806, at *1 (Tex. App.CHouston [14th Dist] Feb. 14, 2006), rev=d per curiam
209 S.W.3d 105 (Tex. 2006).  The supreme court decided both issues adversely to
Keith.  In re
H.R.M., 209 S.W.3d
105, 110B11 (Tex. 2006) (per curiam).





[2]  The supreme court did not disagree with this court=s statement of the standard of review, but with its
application of that standard.  See In re H.R.M., 209 S.W.3d at 109.





[3]  In a single broad‑form question, the jury was
asked whether the parent‑child relationship should be terminated. The
jury, however, was instructed, for the parent‑child relation to be
terminated in this case, it must be proved by clear and convincing evidence
that Keith violated section 161.001(1)(Q) and that termination would be in
H.R.M.=s best interest.  Keith does not challenge the
best-interest finding.





[4]  In the judgment for ARobbery-Enhanced,@ dated February 7, 1992, the court imposed a
twenty-five year sentence, with A131
days from date of sentence@ as time
credited.





[5]  In the judgment for enticing a child, dated October
21, 2002, the court imposed a seven-year sentence with A279 days credit from date of sentence.@





[6]  Despite having the burden to prove their case by
clear and convincing evidence, the petitioners in the present case did not introduce
evidence that might have assisted the jury in translating sentence length into
actual incarceration time or evidence that would have directly contradicted
Keith=s testimony indicating he was within two years of
release.





[7]  See Brazoria County Children=s Protective Servs. v. Frederick, 176 S.W.3d  277, 279B280 (Tex. App.CHouston [1st Dist.] 2004, no pet.) (holding undisputed
fact father had never paid child support for any of his children was factor
that raised triable issues of fact concerning father=s ability to provide financial support for child in
question); In re
B.M.R., 84 S.W.3d
814, 818 (Tex. App.CHouston [1st Dist.] 2002, no pet.)
(in affirming termination of parental rights, noting father=s history of failing to pay child
support, not only for child in question, but for several of his other
children).





[8]  Courts in the following cases have followed the
three-step analysis set forth in Caballero:  Zieger v. Tex. Dep=t of Family & Protective Servs., No. 03‑03‑00690-CV, 2005 WL 2043812, at
*4 (Tex. App.CAustin Aug 25, 2005, pet. denied) (mem. op.); In re
C.E.V., No. 09‑03‑468-CV, 2004 WL 1902537, at *3 (Tex. App.CBeaumont Aug 26, 2004, pet. denied) (mem. op.); Hampton
v. Tex. Dep=t of Protective & Regulatory Servs., 138 S.W.3d 564, 567 (Tex. App.CEl Paso 2004, no pet.); In re E.S.S., 131
S.W.3d 632, 639B40 (Tex. App.CFort
Worth 2004, no pet.).  As set forth above, the petitioners established Keith=s criminal conduct resulted in his incarceration or
confinement for more than two years from the date of the petition.  At trial,
Keith admitted he knew he could go to Ajail@ for the offenses he committed; and, on appeal, he
does not contest the knowingness of his criminal conduct.