COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

                                        NO.
2-04-374-CV

 

IN THE INTEREST OF D.J.J., A CHILD                                                     

 

                                              ------------

 

             FROM
THE 235TH DISTRICT COURT OF COOKE COUNTY

 

                                              ------------

 

                                             OPINION

 

                                              ------------

Appellant Kevin J. appeals
from the trial court=s order
terminating his parental rights in his child, D.J.J.  In twenty points, Kevin challenges the legal
and factual sufficiency of the evidence to support the trial court=s termination order, challenges the constitutionality of Texas Rule of
Civil Procedure 324(b)(2), and complains that his trial counsel was
ineffective.  We reverse and remand.








Kevin has never seen or lived
with D.J.J.  He was arrested for multiple
drug possession offenses before D.J.J. was born and was still in jail when
four-month-old D.J.J. was removed from his mother, Misty Z., due to her drug
use.[1]
At the time of trial, Kevin was serving four concurrent five-year sentences for
drug possession and evading arrest.  He
admitted that his incarceration was his own fault. 

After a jury trial, the jury
found that termination of Kevin=s parental rights would be in D.J.J.=s best interest,[2]
and Kevin=s parental
rights were terminated on the following grounds:

1.  He voluntarily left D.J.J. alone or in the
possession of another without providing adequate support for the child and
remained away for a period of at least six months;

 

2.  He knowingly placed or allowed D.J.J. to
remain in conditions or surroundings that endangered D.J.J.=s
physical or emotional well being;

 

3.  He engaged in conduct or knowingly placed
D.J.J. with persons who engaged in conduct that endangered D.J.J.=s
physical or emotional well being;

 

4.  He failed to support D.J.J. in accordance
with his ability for one year;

 

5.  He constructively abandoned D.J.J.;

6.  He failed to comply with the provisions of a
court order that specifically established the actions necessary for him to
obtain the return of D.J.J.;

 

7.  He used a controlled substance in a manner
that endangered D.J.J.=s
health or safety and (1) failed to complete a court-ordered substance abuse
treatment program or (2) after completion of the program continued to abuse a
controlled substance;








8.  He knowingly engaged in criminal conduct that
has resulted in his conviction of an offense and his confinement or
imprisonment and his inability to care for D.J.J. for not less than two years
from the date of filing the petition for termination.[3]


 

In his first eighteen points,
Kevin challenges the legal and factual sufficiency of the evidence to support
the grounds for termination and the best interest finding. 

Following
a jury trial, legal sufficiency challenges must be preserved in the trial court
through one of the following procedural steps: 
(1) a motion for instructed verdict; (2) a motion for judgment
notwithstanding the verdict; (3) an objection to the submission of the question
to the jury; (4) a motion to disregard the jury's answer to a vital fact
question; or (5) a motion for new trial.[4]  Challenges
to the factual sufficiency of the evidence must be raised in a motion for new
trial.[5]  It is undisputed that Kevin did not do any of
these things.  Therefore, Kevin=s legal and factual sufficiency challenges are waived on appeal.  We overrule Kevin=s first through eighteenth points.








In his twentieth point, Kevin
complains that his trial counsel was ineffective for failing to preserve his
legal and factual sufficiency points in a motion for new trial. 

In Texas, indigent parents
such as Kevin have a statutory right to effective assistance of counsel in
parental rights termination cases.[6]  To establish ineffective assistance, the
appellant must first show that counsel's performance was deficient.[7]  Second, the appellant must show that the
deficient performance prejudiced his case.[8]


In determining whether
counsel's performance in a particular case is deficient, we must take into
account all the circumstances surrounding the case and must focus primarily on
whether counsel performed in a reasonably effective manner.[9]  It is only when the conduct was so outrageous
that no competent attorney would have engaged in it that the challenged conduct
will constitute ineffective assistance.[10]









Not every failure to preserve
evidentiary challenges for appellate review rises to the level of ineffective
assistance.[11]  Rather, we must indulge in the strong
presumption that counsel's conduct falls within the wide range of reasonable
professional assistance, including the possibility that counsel's decision was
based on strategy, or even that counsel, in his professional opinion, believed
the evidence factually sufficient so that a motion for new trial was not
warranted.[12]  Thus, if the evidence is legally and
factually sufficient to support one of the grounds for termination and to prove
that termination is in D.J.J.=s best interest, Kevin received effective assistance of counsel.








In proceedings to terminate
the parent‑child relationship brought under section 161.001 of the family
code, the petitioner must establish one or more of the acts or omissions
enumerated under subdivision (1) of the statute and must also prove that
termination is in the best interest of the child.[13]
 Both elements must be established;
termination may not be based solely on the best interest of the child as
determined by the trier of fact.[14]


Termination of parental
rights is a drastic remedy and is of such weight and gravity that due process
requires the petitioner to justify termination by clear and convincing
evidence.[15]  This intermediate standard falls between the
preponderance standard of ordinary civil proceedings and the reasonable doubt
standard of criminal proceedings.[16]  It is defined as the Ameasure or degree of proof that will produce in the mind of the trier
of fact a firm belief or conviction as to the truth of the allegations sought
to be established.@[17] 








Under the
traditional no-evidence standard, a legal sufficiency challenge may be
sustained when:  (1) the record discloses
a complete absence of evidence of a vital fact; (2) the court is barred by
rules of law or of evidence from giving weight to the only evidence offered to
prove a vital fact; (3) the evidence offered to prove a vital fact is no more
than a mere scintilla; or (4) the evidence conclusively establishes the
opposite of a vital fact.[18]  In parental
rights termination cases, anything more than a scintilla is legally sufficient
if Aa factfinder could reasonably form a firm belief or conviction@ that the grounds for termination were proven.[19]  In determining whether there is legally
sufficient evidence to support the finding under review, we must consider evidence
favorable to the finding if a reasonable factfinder could and disregard
evidence contrary to the finding unless a reasonable factfinder could not.[20]








We now turn to the grounds
for termination.  The Department[21]
argues that the evidence is legally and factually sufficient to support
termination on the eighth ground found by the juryCthat Kevin knowingly engaged in criminal conduct that has resulted in
his conviction for an offense and his confinement or imprisonment and inability
to care for D.J.J. for not less than two years from the date of filing the
petition for termination.[22]  Kevin admits that he received four concurrent
five-year prison sentences for drug possession and evading arrest, but he
contends that there is no evidence he will still be incarcerated two years
after the date the petition for termination was filed. 

The Texas Supreme Court has
held that the phrase Anot less
than two years from the date of filing the petition@ applies prospectively.[23]  Thus, to support termination on this ground,
the Department was required to prove that Kevin=s criminal convictions would result in his confinement for at least
two years from the date the petition was filed.[24]








In this case, it is
undisputed that the Department petitioned to terminate Kevin=s parental rights on January 29, 2004 and that two years from the date
of filing the petition will be January 29, 2006.  It is also undisputed that there is no
evidence regarding when Kevin will be released from prison.  Mary Wolfe, the Child Protective Services
case worker, testified, A[W]e don=t know when his release date is.@  Because there is no evidence
that Kevin=s
convictions will result in his confinement for not less than two years from the
date the petition was filed, the evidence is legally insufficient to support
termination on this ground.[25]

Further, there is no evidence
to support the first, fourth, or fifth grounds for terminationCthat Kevin voluntarily left D.J.J. alone or in the possession of
another for at least six months without providing adequate support; that Kevin
failed to support D.J.J. in accordance with his ability; or that he
constructively abandoned D.J.J.[26]  Kevin=s separation from D.J.J. was not voluntary because he was incarcerated
before D.J.J. was born.  Further, there
is no evidence that Kevin had any means of providing support for D.J.J. or that
D.J.J. lacked anything.  Instead, the
evidence shows that, at the time he was removed from Misty=s care, D.J.J. was developmentally on target, Ahappy, spoiled,@ and well
fed.  In addition, the CPS caseworker
admitted that no efforts, apart from setting up a service plan, were made to
reunite Kevin and D.J.J.[27]  Accordingly, the evidence is legally
insufficient to support termination on these grounds.








Likewise, there is no
evidence to support the second and third groundsCthat Kevin knowingly placed or allowed D.J.J. to remain in conditions
or surroundings that endangered D.J.J.=s physical or emotional well being or engaged in conduct or knowingly
placed D.J.J. with persons who engaged in conduct that endangered D.J.J.=s physical or emotional well being.[28]

The phrase Aconditions or surroundings@ in section 161.001(1)(D) refers only to the acceptability of the
child's living conditions and does not concern the conduct of the parents
toward the children.[29]  Section 161.001(1)(E), on the other hand,
requires us to look at the parent's conduct alone, including actions,
omissions, or the parent's failure to act.[30]

Wolfe testified that D.J.J.
was removed from Misty=s care
because of her drug use, something Misty candidly acknowledged at trial.  In addition, six months before D.J.J.=s birth, Kevin was arrestedCand later imprisonedCon three drug possession charges. 
But there is no evidence that either Kevin=s or Misty=s drug use
created an environment that endangered D.J.J.=s physical or emotional well being.








When he was removed from
Misty=s care, D.J.J. was well cared for and had been receiving proper
medical care.  Further, a police officer
called to Misty=s home just
prior to the removal found no drug paraphernalia or other evidence of criminal
activity, determined that D.J.J. Alooked fine,@ and told a
CPS caseworker, who was also present, to leave. 

Misty acknowledged that using
drugs was Aextremely
dangerous@ for D.J.J.
and that she did not provide a safe environment for him and was unable to take
proper care of him when she was abusing drugs. 
Neither she nor Wolfe, however, could give any examples of how Misty=s drug use threatened D.J.J.=s physical or emotional well being. 
Misty denied using drugs when she conceived or was pregnant with D.J.J.,
and Wolfe testified that D.J.J. had no exposure to drugs or alcohol.  Wolfe also testified that she never saw any
evidence of abuse. 








Finally, there is no evidence
that Kevin=s conduct in
taking the methamphetamines that resulted in his arrest and imprisonment
endangered D.J.J.=s physical
or emotional well being.  Mere
imprisonment, alone, is not conduct endangering a child.[31]  Moreover, Wolfe testified that the Department
was not seeking termination based on Kevin=s incarceration.  Accordingly,
we hold that the evidence is legally insufficient to support termination on
either of these grounds.

For these same reasons, the
evidence is legally insufficient to support termination on the seventh groundCthat Kevin used a controlled substance in a manner that endangered
D.J.J.=s health and safety and failed to complete a court-ordered substance
abuse treatment program or, after completion, continued the drug abuse.[32]  Not only did Kevin=s substance abuse not endanger D.J.J.=s health and safety, but Kevin also, on his own initiative,
successfully completed a thirty-hour substance abuse program while he was in
prison, and he had joined and was participating in Narcotics Anonymous (NA).      Finally, we turn to the sixth ground for terminationCthat Kevin failed to comply with his service plan that established the
actions necessary for him to obtain the return of D.J.J.[33]








Wolfe testified that Kevin=s service plan required him to take a psychological evaluation and a
drug assessment, notify the Department if he was transferred, complete
parenting classes, develop a relationship with D.J.J. by sending him weekly
letters through the Department, complete individual counseling, refrain from
any and all criminal activity, submit to random drug testing, and attend AA and
NA at least three times a week.  Wolfe
further testified, however, that while Kevin was incarcerated the Department
only expected him to write weekly letters to D.J.J., contact the Department to
find out about D.J.J.=s welfare,
and attend AA or NA if those programs were available in the prison facility
where Kevin was housed.  According to
Wolfe, the remaining services were unavailable to Kevin while he was
incarcerated, so the Department did not expect him to comply with those requirements
until after his release. 

Wolfe testified that the
Department had not received any letters from Kevin to D.J.J. and that Kevin had
never contacted the Department to inquire about D.J.J.=s welfare.  Kevin admitted that
he had not written to D.J.J. once a week, as required by his service plan, but
said he had written D.J.J. occasionally and sent those letters to D.J.J.
through Misty.  One letter, which Kevin
testified he had written about three months before the termination trial, was
admitted into evidence.  Further, Misty
testified that she had tried, unsuccessfully, to take D.J.J. to visit Kevin in
jail before his convictions and that Kevin had several photographs of D.J.J. 













Moreover, Wolfe acknowledged
that Kevin had, while incarcerated, successfully completed a substance abuse
counseling program in November 2003Ctwo months before the Department had prepared Kevin=s service plan. In addition, while Kevin had no access to most of the
classes required by his service plan, he testified that he took every class
that was available to him. Besides the substance abuse program, Kevin had
successfully completed an anger/stress management course, obtained his GED, and
had joined and was participating in NA and planned to continue in NA after his
release.  Also, Kevin testified that, at
the time of trial, he was enrolled in a life skills class, was in the sixth
week of a four-to-five-month vocational electrician training course, and had
enrolled in Project Rio, a program that helps ex-offenders obtain jobs once
they are released from prison.  Kevin
testified that he was doing these things so that he would have a way to support
his family once he got out of prison.   Wolfe
acknowledged that Kevin was doing what the Department would want an
incarcerated parent to do by taking advantage of anything available to improve
himself.  Wolfe further testified that
Kevin was cooperative when asked to sign an authorization to furnish the
Department informationCeven though
he knew the information obtained could be adverse to himCand when asked to sign his service plan.  Finally, Wolfe conceded, that, outside of her
initial meeting with Kevin in January 2004 to set up his service plan, neither
she nor any other CPS employee had never attempted to contact Kevin again to
help him comply with the planCeven though she knew which correctional facilities he was in.  Indeed, Wolfe testified that Kevin Areally didn=t have a
chance@ to comply with his service plan, and she admitted that, by January
2004, it was Apretty much@ the Department=s plan to
terminate both Misty=s and Kevin=s parental rights to D.J.J.

Even when viewed in the light
most favorable to the jury=s finding, this evidence is insufficient to allow a factfinder to
reasonably form a firm belief or conviction that Kevin had failed to comply
with his service plan.[34]  The mere fact that Kevin had not written
weekly letters to D.J.J., who was only twenty months old at the time of trial,
is not, alone, legally sufficient to support this ground for termination by
clear and convincing evidence.[35]









Because the evidence is
legally insufficient to support any of the Department=s grounds for terminating Kevin=s parental rights in D.J.J., we cannot presume that trial counsel=s failure to preserve Kevin=s legal sufficiency complaints in a motion for new trial was based on
sound strategy or reasonable professional opinion.[36]
To the contrary, we can only conclude that counsel=s performance was deficient.[37]  Although counsel did not learn of Kevin=s desire to appeal the termination order until shortly before the
filing deadline, Afiling such
a motion is not a difficult task.@[38]

Having determined that trial
counsel=s performance was deficient, we must also decide whether the defective
performance caused harm; in other words, we must decide whether Athere is a reasonable probability that, but for counsel's
unprofessional error(s), the result of the proceeding would have been
different.@[39]  We must conduct our harm
analysis as if the motion for new trial had been filed.[40]








In this case, if trial
counsel had properly preserved Kevin=s legal sufficiency complaints in a motion for new trial, the outcome
of the proceeding would, indeed, have been differentCKevin would be entitled to a new trial in light of the legal sufficiency
of the evidence to support termination.[41]  Therefore, we hold that Kevin=s trial counsel was ineffective.[42]  We sustain Kevin=s twentieth point.[43]

Having sustained Kevin=s ineffective assistance complaint, we reverse the trial court=s order of termination as to Kevin and remand the cause for a new
trial.[44]

 

JOHN CAYCE

CHIEF JUSTICE

 

PANEL
A:   CAYCE, C.J.; WALKER and MCCOY, JJ.

 

DELIVERED:
October 6, 2005

 











[1]Misty=s
parental rights in D.J.J. were also terminated in the underlying proceeding;
however, we dismissed her appeal for want of jurisdiction.  See In re K.M.Z., No. 02-04-00374-CV,
2005 WL 182958 (Tex. App.CFort
Worth Jan. 27, 2005, no pet.).





[2]See Tex. Fam. Code Ann. '
161.001(2) (Vernon 2002).





[3]See
id. '
161.001(C), (D), (E), (F), (N), (O), (P), (Q).





[4]T.O. Stanley Boot Co. v. Bank of El Paso, 847 S.W.2d 218, 220-21 (Tex. 1992); Cecil
v. Smith, 804 S.W.2d 509, 510-11 (Tex. 1991).  





[5]Tex. R. Civ. P. 324(b)(2); Cecil, 804
S.W.2d at 510.  





[6]Tex. Fam. Code Ann. '
107.013(a)(1) (Vernon Supp. 2004-05), ' 263.405(e) (Vernon 2002); In
re M.S., 115 S.W.3d 534, 544 (Tex. 2003). 





[7]M.S., 115
S.W.3d at 545.





[8]Id.





[9]Id.  





[10]Id.





[11]Id. at
549.   





[12]See
id. at 549-50 (stating that appellate court should find failure to file
motion for new trial is ineffective assistance of counsel only when Athe
evidence to support termination was factually insufficient, and . . . counsel's
failure to preserve a factual sufficiency complaint was unjustified and fell
below being objectively reasonable@).





[13]Tex. Fam. Code Ann. '
161.001; Richardson v. Green, 677 S.W.2d 497, 499 (Tex. 1984); Swate
v. Swate, 72 S.W.3d 763, 766 (Tex. App.CWaco 2002, pet. denied).





[14]Tex.
Dep=t of
Human Servs. v. Boyd, 727 S.W.2d 531, 533 (Tex. 1987). 





[15]Tex. Fam. Code Ann. ''
161.001, 161.206(a); In re G.M., 596 S.W.2d 846, 847 (Tex. 1980).  





[16]G.M., 596
S.W.2d at 847; In re D.T., 34 S.W.3d 625, 630 (Tex. App.CFort
Worth 2000, pet. denied).





[17]Tex. Fam. Code Ann. '
101.007 (Vernon 2002).





[18]Uniroyal Goodrich Tire Co. v. Martinez, 977 S.W.2d 328, 334 (Tex. 1998), cert. denied, 526
U.S. 1040 (1999); Robert W. Calvert, "No Evidence"
and "Insufficient Evidence" Points of Error, 38 TEX. L.
REV. 361, 362-63 (1960).





[19]In re
J.F.C., 96 S.W.3d 256, 265 (Tex. 2002); see also Romero v. KPH
Consolidation, Inc., 166 S.W.3d 212, 220 (Tex. 2005); S.W. Bell Tel. Co.
v. Garza, 164 S.W.3d 607, 622, 625 (Tex. 2004).





[20]City of Keller v. Wilson, 168
S.W.3d 802, 807 (Tex. 2005).





[21]The
Texas Department of Family and Protective Services.





[22]See Tex. Fam. Code Ann. '
161.001(1)(Q).





[23]In re
A.V., 113 S.W.3d 355, 359-60 (Tex. 2003).





[24]In re
D.R.L.M., 84 S.W.3d 281, 295 (Tex. App.CFort
Worth 2002, pet. denied); accord In re R.F., 89 S.W.3d 258, 260 (Tex.
App.CCorpus
Christi 2002, no pet.); In re B.M.R., 84 S.W.3d 814, 817-18 (Tex. App.CHouston
[1st Dist.] 2002, no pet.). In A.V. the supreme court did not hold, as
the Department contends, that the evidence is sufficient to establish the
two-year requirement if a parent is sentenced to serve at least two years.  The sufficiency of the evidence was not
challenged in A.V., and the father=s projected release date from
prison was more than two years after the termination petition was filed.  See A.V., 113 S.W.3d at 357, 362.





[25]See Tex. Fam. Code Ann. '
161.001 (1) (Q).





[26]See
id. '
161.001(1)(C), (F), (N).





[27]See
id. '
161.001(1)(N)(i).





[28]See
id. '
161.001(1)(D)-(E).





[29]Rodriguez
v. Tex. Dep=t of
Human Servs., 737 S.W.2d 25, 27 (Tex. App.CEl
Paso 1987, no writ), disapproved on other grounds, In re J.F.C.,
96 S.W.3d 256 (Tex. 2002); In re S.H.A., 728 S.W.2d 73, 84 (Tex. App.CDallas
1987, writ ref=d
n.r.e.).





[30]In re
D.M., 58 S.W.3d 801, 811-12 (Tex. App.CFort Worth 2001, no pet.).





[31]Boyd, 727
S.W.2d at 533; In re S.D.H., 591 S.W.2d 637, 638 (Tex. Civ. App.CEastland
1979, no writ). 





[32]See Tex. Fam. Code Ann. '
161.001(1)(P).





[33]See id.
'
161.001(1)(O).  Apparently, the service
plan is the only court order with which Kevin was required to comply.  Wolfe could not recall whether Kevin had been
ordered to pay child support, nor did she know whether a parent is ordinarily
required to pay child support while incarcerated. 





[34]See
J.F.C., 96 S.W.3d at 265-66.





[35]Tex. Fam. Code Ann. ''
161.001, 161.206(a); G.M., 596 S.W.2d at 847.





[36]See
M.S., 115 S.W.3d at 549. 





[37]See
id. at 545.





[38]Id. at
549.





[39]Id. at
549-50 (quoting Garcia v. State, 57 S.W.3d 436, 440 (Tex. Crim. App.
2001), cert. denied, 537 U.S. 1195 (2003)).





[40]See
id. at 550.





[41]Id.;
see also Horrocks v. Tex. Dep=t of Transp., 852
S.W.2d 498, 498-99 (Tex. 1993) (holding that, if appellant preserves legal
sufficiency complaint in motion for new trial, new trial is all the relief
appellate court can give because that is all the relief appellant requested in
trial court).





[42]M.S., 115
S.W.3d at 550.





[43]In
light of our disposition of this point, we need not address Kevin=s
factual sufficiency challenges or his nineteenth point, in which he challenges
the constitutionality of procedural rule 324(b)(2) as applied to termination
proceedings.  See Tex. R. App. P. 47.1.  Rule 324(b)(2) provides that a motion for new
trial is a prerequisite only to a factual sufficiency complaint
following a jury trial.  Tex. R. Civ. P. 324(b)(2).





[44]See
M.S., 115 S.W.3d at 550.