**Opinion filed July 30, 2009**



In The

# Eleventh Court of Appeals

———————

## No. 11-08-00294-CV

———————

## IN THE INTEREST OF D.H., S.H., & B.H., CHILDREN

---

**On Appeal from the 326th District Court**

**Taylor County, Texas**

**Trial Court Cause No. 6471-CX**

---

### M E M O R A N D U M   O P I N I O N

In this appeal, appellant challenges the termination of his parental rights to his minor children, D.H., S.H., and B.H.  In doing so, he presents four issues that, he asserts, reveal the trial court reversibly erred in terminating his parental rights.  In those issues, he contends that (1) the evidence was legally and factually insufficient to support the court's finding that he had knowingly engaged in criminal conduct that resulted in his conviction of an offense and confinement or imprisonment and inability to care for the children for not less than two years from the date of the filing of the petition, (2) the evidence was legally and factually insufficient to support the court's finding that the termination of the parent-child relationship between himself and the children the subject of this suit would be in the best interest of the children, (3) the court abused its discretion in denying his application for a bench warrant to allow him to be present in the trial court at the time of the hearing on the termination proceeding, and (4) the denial of his application for a bench warrant

to be present at trial constituted a denial of the due process guaranteed him under the United States and Texas Constitutions. Disagreeing that reversible error is shown, we affirm.

In any consideration of the termination of parental rights, the reviewing court must bear in mind that the natural right existing between a parent and child is of constitutional dimension and the involuntary termination of parental rights interferes with a fundamental constitutional right. *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985); *In re G.M.*, 596 S.W.2d 846, 847 (Tex. 1980). Consequently, termination proceedings should be strictly construed in favor of preserving the relationship. *Holick*, 685 S.W.2d at 20. Parental rights are so important that, for a trial court to terminate those rights, there must be clear and convincing evidence that establishes one statutory ground for the termination and that the termination is in the child's best interest. TEX. FAM. CODE ANN. § 161.001 (Vernon 2008); *Holick*, 685 S.W.2d at 20. The "[c]lear and convincing evidence" requirement is statutorily defined as "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE ANN. § 101.007 (Vernon 2008).

In cases such as this one, in which both the legal and factual sufficiency of the evidence must be reviewed, there is a fine line in distinguishing between the two questions, but a different analysis must be applied in determining each question. *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002). In both instances, we ask whether the evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth of the matter on which the State bears the burden of proof. *Id.* at 265-66. However, as we have noted, the body of evidence is approached differently in conducting the legal and factual sufficiency reviews.

When reviewing legal sufficiency, we traditionally look at the evidence in the light most favorable to the finding. In the clear-and-convincing context, this means we must assume that the factfinder resolved disputed facts in favor of its finding, if a reasonable factfinder could do so. *Id.* at 266. We must disregard all evidence that a reasonable factfinder could have disbelieved or found incredible. *Id.* We may not, however, disregard undisputed facts that do not support the finding. *Id.*

When reviewing factual sufficiency, we must give "due consideration" to any evidence the factfinder could reasonably have found to be clear and convincing. *Id.* This means that we must look at the disputed evidence and determine if a reasonable factfinder could have resolved the evidence in favor of the finding. The evidence is factually insufficient if, in light of the entire record, the

2

disputed evidence that a reasonable factfinder *could not* have credited in favor of the finding is so significant that the factfinder could not have reasonably formed a firm belief or conviction. *Id*.

Because of the essential similarity of the matters presented by appellant's first two issues, we will consider them together. Appellant's parental rights were terminated under Section 161.001(1)(Q). That subsection allows termination of parental rights when clear and convincing evidence shows that a parent "knowingly engaged in criminal conduct that has resulted in the parent's: (i) conviction of an offense; and (ii) confinement or imprisonment and inability to care for the child for not less than two years from the date of filing the petition." Section 161.001(1)(Q). Subsection Q is applied prospectively. *See In re A.V.*, 113 S.W.3d 355, 360 (Tex. 2003). Even so, incarceration for the requisite period by itself does not justify termination. *In re Caballero*, 53 S.W.3d 391, 398 (Tex. App.—Amarillo 2001, pet. denied). The evidence must also show the parent's inability to care for the child for the two years. *In re B.M.R.*, 84 S.W.3d 814, 818 (Tex. App.—Houston [1st. Dist] 2002, no pet.). A factor to be considered when deciding if there is an inability to provide care is the availability of financial and emotional support from the incarcerated parent. *Id.*

In support of its petition seeking termination, the State presented the testimony of Elizabeth Pallarez, an employee of the Department of Family and Protective Services (the Department). Pallarez averred that she became the assigned caseworker with the children in June 2007. She said that appellant had been incarcerated since March 31, 2006, after having been convicted on two counts of robbery. His projected release date would be on March 13, 2030. She stated that she had reviewed the prior history of appellant as revealed by the Department's file; and nothing there showed that appellant had been involved with the children, had supported them, or had a bond with them. She testified that appellant had neither kept in regular contact with the Department nor actively worked the parts of a service plan the Department had forwarded to him in prison, a part of which requested him to maintain regular contact with the Department.

Pallarez averred that she had been sending appellant monthly communications regarding the progress of the children but that appellant had never responded to those reports. She also noted that, although she believed the children knew who their father was, they had never asked for him and, to her knowledge, they had no bond with him. She further reported that they were "doing very good" in their current placement and knew the couple as their family and that the couple hoped to adopt the children. She commented that the children came into supervision because of "neglectful

3

supervision, mom was a prostitute, and there [were] drugs in the home and domestic violence in the home."

Under cross-examination, she said that she was familiar with the fact that an affidavit filed with the papers in the case averred that the children had lived in ten different places in the last five years and that appellant was not involved with the children in any of those moves. She admitted that appellant's release date was based upon his serving the entire sentence and that there was a possibility he would be paroled although he had been denied parole once. She also admitted that she did not know if appellant actually knew where the children were during the period of time their mother was moving them around. She agreed that appellant had no ability to pay any kind of child support because of his incarceration. She also did not personally know of any parenting or counseling classes available to appellant in prison, although the chaplain at the prison had orally told her that appellant would not attend counseling classes.

The witness said that the couple with whom the children were placed had advised her that appellant had not contacted the children. She also admitted that, because of his incarceration, "in some senses," he had been unable to complete the service plan submitted by the Department to him and that she did not know if he even knew what his service plan was. She also admitted that she did not personally know what kind of relationship appellant may have had with the children or his ability to support them in earlier years prior to his incarceration.

When questioned by the attorney ad litem, Pallarez testified that the children were doing well in school, they were healthy and participated in school activities, and they had bonded with the couple in whose home they were placed and who hoped to adopt them. She also averred that appellant was not making any effort to communicate with the children or their placement couple and that there was no indication that he had any bond with the children.

Appellant, through his attorney, submitted four letters – three from him and one from a friend of his. The evidence is undisputed that appellant's scheduled release date was March 13, 2030. In a letter dated April 13, 2008, appellant admitted that he would not be eligible for parole for two more years from that date. He had been denied parole in December 2007. Assuming that appellant's proffered testimony in his letters concerning the possibility of parole is relevant, even if he was successful in obtaining parole the next time he was eligible, it would be more than two years from the date of the filing of the petition to terminate. Additionally, parole decisions are inherently speculative and even though appellant might have taken positive steps to improve his chances of

4

obtaining parole and while all inmates doubtless hope such steps may improve their odds for a favorable decision, the courts have noted that such matters rest entirely within the parole board's discretion. *In re H.R.M.*, 209 S.W.3d 105, 109 (Tex. 2006).

It is undisputed that appellant did not arrange for a caregiver for his children before going to prison. In his letters, appellant stated that the children's mother was an unfit mother and that he wanted to keep them away from her, but he did nothing to protect them while he was still out of prison and, indeed, left them in her care when he went to prison. Moreover, although appellant stated in his letters that it was because of his incarceration he could not support his children or take care of them, the evidence was sufficient to justify the trial court in determining that he had neither supported the children nor been involved in their lives during the time since the Department had become involved in 2001. In sum, the evidence is sufficient to justify the trial court in its evident conclusion that appellant was unable to care for the children while he was incarcerated.

Having reached that conclusion, it now becomes our task to determine if the evidence is sufficient to sustain a conclusion that the termination of appellant's parental rights is in the best interest of the children. In making that decision, there are numerous factors to be considered. Among others, the trier of fact may consider the desires of the children, the present and future emotional and physical needs of the children, the present and future emotional and physical danger to the children, the parental abilities of the persons who may be seeking custody, the programs available to assist those seeking custody, and any excuse for the acts or omissions of the parents. *See Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976). All of those factors are directed at the best interest of the children, not that of the parent. *Dupree v. Tex. Dep't of Protective & Regulatory Servs.*, 907 S.W.2d 81, 86 (Tex. App.—Dallas 1995, no writ).

Although appellant does claim a relationship, the testimony shows that the children have not bonded with him and, as he admits, do not reply to his letters. The evidence shows that, for a majority of their lives, the children were allowed to stay with their mother, who appellant now admits was not a proper custodian. The testimony also shows that the children now are happy and well-adjusted, are in a stable environment, and are placed with a relative who plans to adopt them. Considered in its entirety, we can only conclude that the trial evidence was sufficient to show clearly and convincingly that appellant is not able to meet the emotional and physical needs of the children and was also sufficient to clearly and convincingly support the trial court's decision to terminate appellant's parental rights. Appellant's first two issues are overruled.

5

It now becomes our task to consider appellant's third and fourth issues. As we noted above, in those issues, he asserts that the trial court abused its discretion in denying a bench warrant to allow his in-court presence during the trial and that, by denying the bench warrant, the trial court denied him the due process to which he was entitled under the United States and Texas Constitutions.

In the seminal case of *In re Z.L.T.*, 124 S.W.3d 163 (Tex. 2003), the court had occasion to explicate the factors to be considered in determining whether a trial court reversibly erred in refusing to grant a bench warrant to bring a penal inmate to the hearing of a parental termination proceeding. In some detail, the high court explained that, although an inmate cannot be denied access to the courts simply because he is an inmate, an inmate does not have an absolute right to appear in person in every court proceeding. Rather, that right to appear must be weighed against the protection of our correctional system's integrity. 124 S.W.3d at 165. Factors to be weighed in determining whether a bench warrant should be issued include the cost and inconvenience of transporting the prisoner to the courtroom; the security risk the prisoner presents to the court and public; whether the prisoner's claims are substantial; whether the matter's resolution can reasonably be delayed until the prisoner's release; whether the prisoner can and will offer admissible, non-cumulative testimony that cannot be effectively presented by deposition, telephone, or some other means; whether the prisoner's presence is important in judging his demeanor and credibility; whether the trial is to the court or a jury; and the prisoner's probability of succeeding on the merits. *Id.* at 165-66. The trial court's ruling on the denial of a bench warrant is reviewed under an abuse of discretion standard. *Id.* at 165.

A trial court abuses its discretion if it acts arbitrarily and unreasonably or without reference to guiding principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985). We are also reminded that, when reviewing matters related to the trial court's discretion, we may not substitute our judgment for that of the trial court. *Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002).

The trial court allowed appellant, through his attorney, to submit anything he wished the court to consider. He submitted four letters – three from him and one from his friend. In his letters, he iterated in detail and in a comprehensive manner his contentions and his past history as well as the reasons for that history and the matters he wished the court to consider in making its decision.

The undisputed evidence showed that appellant's presently scheduled release date is March 13, 2030. He admitted in his April 13, 2008 letter that he did not expect another parole hearing for two more years. Although he raised the possibility of parole, the granting of such parole

6

is so speculative that the trial court would be justified in concluding that appellant's release was not probable in the near future. Additionally, appellant's letters indicated that he had no ability to care for the children while he was incarcerated, and he gave no indication that he had made arrangements for anyone to care for the children while he was incarcerated. He admitted that the present caretakers of the children were good but asserted that they should only be given temporary custody. The trial court could reasonably assume that appellant's presence at the hearing would only result in testimony similar to that he had given in writing. The record shows that appellant was represented by counsel at the hearing and that the State's testimony was thoroughly and ably tested by cross-examination and by argument.

The trial court stated on the record its reasons for denying the bench warrant. It specifically found that (1) the cost and inconvenience to the court would be great, (2) appellant would be a security risk, (3) the resolution of the grounds alleged did not require appellant's presence to witness his demeanor or credibility, and (4) the time of appellant's release was not imminent.

Our review of the record shows that the trial court did not abuse its discretion in making its ruling and that the evidence was both legally and factually sufficient to support the termination of appellant's parental rights. Therefore, appellant's third and fourth issues are overruled.

In sum, there being no reversible error, the trial court's order must be, and is hereby, affirmed.


JOHN T. BOYD
SENIOR JUSTICE


July 30, 2009

Panel consists of: Wright, C.J.,
McCall, J., and Boyd, S.J.[1]

---

[1]John T. Boyd, Retired Chief Justice, Court of Appeals, 7th District of Texas at Amarillo, sitting by assignment.