Opinion filed July 30, 2009











 
 
  
 
 







 
 
  
 
 




Opinion filed July 30,
2009

 

 

 

 

 

 

                                                                        In The

                                                                              

    Eleventh
Court of Appeals

                                                                   __________

 

                                                          No. 11-08-00294-CV

                                                      _________

 

                  IN THE
INTEREST OF D.H., S.H., & B.H., CHILDREN

 

 



 

                                         On
Appeal from the 326th District Court

 

                                                          Taylor
County, Texas

 

                                                 Trial
Court Cause No. 6471-CX

 



 

                                             M
E M O R A N D U M   O P I N I O N








In
this appeal, appellant challenges the termination of his parental rights to his
minor children, D.H., S.H., and B.H.  In doing so, he presents four issues
that, he asserts, reveal the trial court reversibly erred in terminating his
parental rights.  In those issues, he contends that (1) the evidence was
legally and factually insufficient to support the court=s finding that he had knowingly engaged in
criminal conduct that resulted in his conviction of an offense and confinement
or imprisonment and inability to care for the children for not less than two
years from the date of the filing of the petition, (2) the evidence was legally
and factually insufficient to support the court=s
finding that the termination of the parent-child relationship between himself
and the children the subject of this suit would be in the best interest of the
children, (3) the court abused its discretion in denying his application for a
bench warrant to allow him to be present in the trial court at the time of the
hearing on the termination proceeding, and (4) the denial of his application
for a bench warrant to be present at trial constituted a denial of the due
process guaranteed him under the United States and Texas Constitutions. 
Disagreeing that reversible error is shown, we affirm.

           In
any consideration of the termination of parental rights, the reviewing court
must bear in mind that the natural right existing between a parent and child is
of constitutional dimension and the involuntary termination of parental rights
interferes with a fundamental constitutional right.  Holick v. Smith,
685 S.W.2d 18, 20 (Tex. 1985); In re G.M., 596 S.W.2d 846, 847 (Tex.
1980).  Consequently, termination proceedings should be strictly construed in
favor of preserving the relationship.  Holick, 685 S.W.2d at 20. 
Parental rights are so important that, for a trial court to terminate those
rights, there must be clear and convincing evidence that establishes one
statutory ground for the termination and that the termination is in the child=s best interest.  Tex. Fam. Code Ann. ' 161.001 (Vernon 2008); Holick,
685 S.W.2d at 20.  The A[c]lear
and convincing evidence@
requirement  is statutorily defined as Athe
measure or degree of proof that will produce in the mind of the trier of fact a
firm belief or conviction as to the truth of the allegations sought to be
established.@  Tex. Fam. Code Ann. ' 101.007 (Vernon 2008).

In
cases such as this one, in which both the legal and factual sufficiency of the
evidence must be reviewed, there is a fine line in distinguishing between the
two questions, but a different analysis must be applied in determining each
question.  In re J.F.C., 96 S.W.3d 256, 266 (Tex. 2002).  In both
instances, we ask whether the evidence is such that a factfinder could
reasonably form a firm belief or conviction about the truth of the matter on
which the State bears the burden of proof.  Id. at 265-66.  However, as
we have noted, the body of evidence is approached differently in conducting the
legal and factual sufficiency reviews. 

 When
reviewing legal sufficiency, we traditionally look at the evidence in the light
most favorable to the finding.  In the clear-and-convincing context, this means
we must assume that the factfinder resolved disputed facts in favor of its
finding, if a reasonable factfinder could do so.  Id. at 266.  We
must disregard all evidence that a reasonable factfinder could have disbelieved
or found incredible.  Id.  We may not, however, disregard undisputed
facts that do not support the finding.  Id.  








When
reviewing factual sufficiency, we must give Adue
consideration@ to any
evidence the factfinder could reasonably have found to be clear and convincing. 
Id. This means that we must look at the disputed evidence and determine
if a reasonable factfinder could have resolved the evidence in favor of the
finding.  The evidence is factually insufficient if, in light of the entire
record, the disputed evidence that a reasonable factfinder could not
have credited in favor of the finding is so significant that the factfinder
could not have reasonably formed a firm belief or conviction.  Id.

Because
of the essential similarity of the matters presented by appellant=s first two issues, we will
consider them together. Appellant=s
parental rights were terminated under Section 161.001(1)(Q).   That
subsection allows termination of parental rights when clear and convincing
evidence shows that a parent Aknowingly
engaged in criminal conduct that has resulted in the parent=s:  (i) conviction of an
offense; and (ii) confinement or imprisonment and inability to care for the
child for not less than two years from the date of filing the petition.@ 
Section 161.001(1)(Q).  Subsection Q is applied prospectively.  See In
re A.V., 113 S.W.3d 355, 360 (Tex. 2003).  Even so, incarceration for the
requisite period by itself does not justify termination.  In re Caballero,
53 S.W.3d 391, 398 (Tex. App.CAmarillo
2001, pet. denied).  The evidence must also show the parent=s inability to care for the
child for the two years.  In re B.M.R., 84 S.W.3d 814, 818 (Tex. App.CHouston [1st. Dist] 2002,
no pet.).  A factor to be considered when deciding if there is an inability to
provide care is the availability of financial and emotional support from the
incarcerated parent.  Id. 

 In
support of its petition seeking termination, the State presented the testimony
of Elizabeth Pallarez, an employee of the Department of Family and Protective
Services (the Department).  Pallarez averred that she became the assigned
caseworker with the children in June 2007.  She said that appellant had been
incarcerated since March 31, 2006, after having been convicted on two counts of
robbery.  His projected release date would be on March 13, 2030.  She stated
that she had reviewed the prior history of appellant as revealed by the
Department=s file; and
nothing there showed that appellant had been involved with the children, had
supported them, or had a bond with them.  She testified that appellant had
neither kept in regular contact with the Department nor actively worked the
parts of a service plan the Department had forwarded to him in prison, a part
of which requested him to maintain regular contact with the Department.








Pallarez
averred that she had been sending appellant monthly communications regarding
the progress of the children but that appellant had never responded to those
reports.  She also noted that, although she believed the children knew who
their father was, they had never asked for him and, to her knowledge, they had
no bond with him.  She further reported that they were Adoing very good@
in their current placement and knew the couple as their family and that the
couple hoped to adopt the children.  She commented that the children came into
supervision because of Aneglectful
supervision, mom was a prostitute, and there [were] drugs in the home and domestic
violence in the home.@

Under
cross-examination, she said that she was familiar with the fact that an
affidavit filed with the papers in the case averred that the children had lived
in ten different places in the last five years and that appellant was not
involved with the children in any of those moves.  She admitted that appellant=s release date was based
upon his serving the entire sentence and that there was a possibility he would
be paroled although he had been denied parole once.  She also admitted that she
did not know if appellant actually knew where the children were during the
period of time their mother was moving them around.  She agreed that appellant
had no ability to pay any kind of child support because of his incarceration. 
She also did not personally know of any parenting or counseling classes
available to appellant in prison, although the chaplain at the prison had
orally told her that appellant would not attend counseling classes.

The
witness said that the couple with whom the children were placed had advised her
that appellant had not contacted the children.  She also admitted that, because
of his incarceration, Ain
some senses,@ he had
been unable to complete the service plan submitted by the Department to him and
that she did not know if he even knew what his service plan was.  She also
admitted that she did not personally know what kind of relationship appellant
may have had with the children or his ability to support them in earlier years
prior to his incarceration.

When
questioned by the attorney ad litem, Pallarez testified that the children were
doing well in school, they were healthy and participated in school activities,
and they had bonded with the couple in whose home they were placed and who
hoped to adopt them.  She also averred that appellant was not making any effort
to communicate with the children or their placement couple and that there was
no indication that he had any bond with the children.  








Appellant,
through his attorney, submitted four letters B
three from him and one from a friend of his.  The evidence is undisputed that
appellant=s scheduled
release date was March 13, 2030.  In a letter dated April 13, 2008, appellant
admitted that he would not be eligible for parole for two more years from that
date.  He had been denied parole in December 2007.  Assuming that appellant=s proffered testimony in
his letters concerning the possibility of parole is relevant, even if he was
successful in obtaining parole the next time he was eligible, it would be more
than two years from the date of the filing of the petition to terminate. 
Additionally, parole decisions are inherently speculative and even though
appellant might have taken positive steps to improve his chances of obtaining
parole and while all inmates doubtless hope such steps may improve their odds
for a favorable decision, the courts have noted that such matters rest entirely
within the parole board=s
discretion.  In re H.R.M., 209 S.W.3d 105, 109 (Tex. 2006).

It
is undisputed that appellant did not arrange for a caregiver for his children
before going to prison.  In his letters, appellant stated that the children=s mother was an unfit
mother and that he wanted to keep them away from her, but he did nothing to
protect them while he was still out of prison and, indeed, left them in her
care when he went to prison.  Moreover, although appellant stated in his
letters that it was because of his incarceration he could not support his
children or take care of them, the evidence was sufficient to justify the trial
court in determining that he had neither supported the children nor been
involved in their lives during the time since the Department had become
involved in 2001.  In sum, the evidence is sufficient to justify the trial
court in its evident conclusion that appellant was unable to care for the
children while he was incarcerated.

Having
reached that conclusion, it now becomes our task to determine if the evidence is
sufficient to sustain a conclusion that the termination of appellant=s parental rights is in the
best interest of the children.  In making that decision, there are numerous
factors to be considered.  Among others, the trier of fact may consider the
desires of the children, the present and future emotional and physical needs of
the children, the present and future emotional and physical danger to the
children, the parental abilities of the persons who may be seeking custody, the
programs available to assist those seeking custody, and any excuse for the acts
or omissions of the parents.  See Holley v. Adams, 544 S.W.2d 367,
371-72 (Tex. 1976).  All of those factors are directed at the best interest of
the children, not that of the parent.  Dupree v. Tex. Dep=t of Protective &
Regulatory Servs., 907 S.W.2d 81, 86 (Tex. App.CDallas 1995, no writ).

Although
appellant does claim a relationship, the testimony shows that the children have
not bonded with him and, as he admits, do not reply to his letters.  The
evidence shows that, for a majority of their lives, the children were allowed
to stay with their mother, who appellant now admits was not a proper
custodian.  The testimony also shows that the children now are happy and
well-adjusted, are in a stable environment, and are placed with a relative who
plans to adopt them.  Considered in its entirety, we can only conclude that the
trial evidence was sufficient to show clearly and convincingly that appellant
is not able to meet the emotional and physical needs of the children and was
also sufficient to clearly and convincingly support the trial court=s decision to terminate
appellant=s parental
rights.  Appellant=s
first two issues are overruled.








It
now becomes our task to consider appellant=s
third and fourth issues.  As we noted above, in those issues, he asserts that
the trial court abused its discretion in denying a bench warrant to allow his
in-court presence during the trial and that, by denying the bench warrant, the
trial court denied him the due process to which he was entitled under the
United States and Texas Constitutions.                In the seminal case of In
re Z.L.T., 124 S.W.3d 163 (Tex. 2003), the court had occasion to explicate
the factors to be considered in determining whether a trial court reversibly
erred in refusing to grant a  bench warrant to bring a penal inmate to the
hearing of a parental termination proceeding.  In some detail, the high court
explained that, although an inmate cannot be denied access to the courts simply
because he is an inmate, an inmate does not have an absolute right to appear in
person in every court proceeding.  Rather, that right to appear must be weighed
against the protection of our correctional system=s
integrity.  124 S.W.3d at 165.  Factors to be weighed in determining whether a
bench warrant should be issued include the cost and inconvenience of
transporting the prisoner to the courtroom; the security risk the prisoner
presents to the court and public; whether the prisoner=s claims are substantial; whether the matter=s resolution can reasonably
be delayed until the prisoner=s
release; whether the prisoner can and will offer admissible, non-cumulative
testimony that cannot be effectively presented by deposition, telephone, or
some other means; whether the prisoner=s
presence is important in judging his demeanor and credibility; whether the
trial is to the court or a jury; and the prisoner=s
probability of succeeding on the merits.  Id. at 165-66.  The trial
court=s ruling on the
denial of a bench warrant is reviewed under an  abuse of discretion standard.  Id.
at 165.    A trial court abuses its discretion if it acts arbitrarily
and unreasonably or without reference to guiding principles.  Downer v.
Aquamarine Operators, Inc., 701 S.W.2d 238, 241-42 (Tex. 1985).  We are
also reminded that, when reviewing matters related to the trial court=s discretion, we may not
substitute our judgment for that of the trial court.  Bowie Mem=l Hosp. v. Wright, 79
S.W.3d 48, 52 (Tex. 2002). 

The
trial court allowed appellant, through his attorney, to submit anything he
wished the court to consider.  He submitted four letters B three from him and one
from his friend.  In his letters, he iterated in detail and in a comprehensive
manner his contentions and his past history as well as the reasons for that
history and the matters he wished the court to consider in making its decision.








The
undisputed evidence showed that appellant=s
presently scheduled release date is March 13, 2030.  He admitted in his
April 13, 2008 letter that he did not expect another parole hearing for two more
years.  Although he raised the possibility of parole, the granting of such
parole is so speculative that the trial court would be justified in concluding
that appellant=s
release was not probable in the near future.  Additionally, appellant=s letters indicated that he
had no ability to care for the children while he was incarcerated, and he gave
no indication that he had made arrangements for anyone to care for the children
while he was incarcerated.  He admitted that the present caretakers of the
children were good but asserted that they should only be given temporary
custody.  The trial court could reasonably assume that appellant=s presence at the hearing
would only result in testimony similar to that he had given in writing.  The
record shows that appellant was represented by counsel at the hearing and that
the State=s testimony
was thoroughly and ably tested by cross-examination and by argument.   

The
trial court stated on the record its reasons for denying the bench warrant.  It
specifically found that (1) the cost and inconvenience to the court would be
great, (2) appellant would be a security risk, (3) the resolution of the
grounds alleged did not require appellant=s
presence to witness his demeanor or credibility, and (4) the time of appellant=s release was not imminent.

Our
review of the record shows that the trial court did not abuse its discretion in
making its ruling and that the evidence was both legally and factually
sufficient to support the termination of appellant=s parental rights.  Therefore, appellant=s third and fourth issues
are overruled.

In
sum, there being no reversible error, the trial court=s order must be, and is hereby, affirmed.

 

 

JOHN T. BOYD

SENIOR JUSTICE

 

July 30, 2009

Panel consists of:  Wright, C.J.,

McCall, J., and Boyd, S.J.[1]









[1]John T. Boyd, Retired Chief Justice, Court of Appeals,
7th District of Texas at Amarillo, sitting by assignment.