**Affirmed and Memorandum Opinion filed April 14, 2016.**



In The

# Fourteenth Court of Appeals

### NO. 14-15-00910-CV

## IN THE INTEREST OF I.W. AKA A.A.W. AND I.W. AKA J.A.W., CHILDREN

**On Appeal from the 313th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2014-04849J**

## M E M O R A N D U M   O P I N I O N

Appellant A.T.V. appeals the trial court's final decree terminating his parental rights regarding his one-year-old twins, Amy and Jimmy, and appointing appellee Texas Department of Family and Protective Services (the Department) to be the twins' managing conservator.[1] The twins' mother, Kate, relinquished her parental rights. Appellant raises four issues challenging the sufficiency of the evidence to support the judgment. Because the judgment is supported by sufficient evidence, we affirm.

---

[1] We use fictitious names in this opinion. *See* Tex. R. App. P. 9.8(b)(2).

## BACKGROUND

On September 16, 2014, Kate arrived at the emergency room of a Houston hospital complaining of severe abdominal pain and bleeding after intercourse. She was approximately 25 weeks pregnant with the twins. Kate knew she was pregnant but used methamphetamine throughout her pregnancy, including the day prior to her arrival at the hospital. She did not seek prenatal care during her pregnancy.

The twins were delivered that day via c-section. Each weighed a little over one pound. They were admitted to the neonatal intensive care unit. Both babies suffered from respiratory distress syndrome resulting from Kate's drug use.

The next day, the Department received a referral alleging physical abuse of the twins. After interviewing Kate and hospital personnel, the Department filed a petition for conservatorship and termination of Kate's parental rights due to her physical abuse of the babies. The Department did not know the identity of the twins' father at that time. A few days later, the Department filed an amended petition naming appellant as their alleged father. Appellant filed an answer pro se denying he was the babies' father and asking for genetic testing. However, before such a test was performed, appellant wrote a letter to the Department caseworker saying he was the babies' father and he wanted full custody of them. Based on the results of a DNA test, the trial court adjudicated appellant to be the twins' father in June 2015. The court also appointed counsel for appellant at that time.

Trial to the associate judge was conducted on October 7, 2015. *See* Tex. Fam. Code Ann. § 201.007 (powers of associate judge). The Department caseworker, Child Advocates volunteer, the babies' foster mother, and Kate testified. Appellant did not testify or call any witnesses. He offered the letter discussed above into evidence, and the trial court admitted it without objection. He

2

did not offer any other evidence. Kate filed an irrevocable affidavit of relinquishment of her parental rights of the twins.

The district judge signed a final decree terminating appellant's rights under subsections E, L, N, O, and Q of section 161.001(1) of the Family Code.[2] Kate's parental rights were terminated based on her affidavit of relinquishment. *See* Tex. Fam. Code Ann. §§ 161.001(1)(K) (termination may be based on affidavit of relinquishment); 161.103 (requirements for affidavit). The trial court also found termination of Kate's and appellant's parental rights was in the twins' best interest. *Id.* § 161.001(2). The Department was appointed to be their managing conservator.

As of the time of trial, both babies were healthy and living with foster parents who intended to adopt them.

## ANALYSIS

### I.  Burden of proof and standard of review

Involuntary termination of parental rights is a serious matter implicating fundamental constitutional rights. *See In re G.M.*, 596 S.W.2d 846, 846 (Tex. 1980); *In re S.R.*, 452 S.W.3d 351, 357 (Tex. App.—Houston [14th Dist.] 2014, pet. denied). Although parental rights are of constitutional magnitude, they are not absolute. The child's emotional and physical interests must not be sacrificed merely to preserve the parent's rights. *In re C.H.*, 89 S.W.3d 17, 26 (Tex. 2002).

Due to the severity and permanency of the termination of parental rights, the burden of proof is heightened to the clear and convincing evidence standard. *See* Tex. Fam. Code Ann. § 161.001; *In re J.F.C.*, 96 S.W.3d 256, 265–66 (Tex. 2002).

---

[2] The numbering of section 161.001 changed on September 1, 2015. Section 161.001(1) is now section 161.001(b)(1). Act of June 18, 2015, 84th Leg., R.S., ch. 944, § 11, 2015 Tex. Sess. Law. Serv. 3271 (West) (codified at Tex. Fam. Code Ann. § 161.001(b)(1)). This case is governed by the preceding version, effective January 1, 2011. We refer to the 2011 version in this opinion.

"'Clear and convincing evidence' means the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." Tex. Fam. Code Ann. § 101.007; *accord J.F.C.*, 96 S.W.3d at 264. This heightened burden of proof results in a heightened standard of review. *S.R.*, 452 S.W.3d at 358.

Parental rights can be terminated upon proof by clear and convincing evidence that (1) the parent has committed an act described in section 161.001(1) of the Texas Family Code, and (2) termination is in the best interest of the child. Tex. Fam. Code Ann. § 161.001. Only one predicate finding under section 161.001(1) is necessary to support a decree of termination when there is also a finding that termination is in the child's best interest. *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003).

In reviewing the legal sufficiency of the evidence in a termination case, we consider all the evidence in the light most favorable to the finding to determine whether a reasonable fact finder could have formed a firm belief or conviction that its finding was true. *See In re J.O.A.*, 283 S.W.3d 336, 344 (Tex. 2009); *J.F.C.*, 96 S.W.3d at 266; *C.H.*, 89 S.W.3d at 25. We assume the fact finder resolved disputed facts in favor of its finding if a reasonable fact finder could do so, and we disregard all evidence a reasonable fact finder could have disbelieved. *J.O.A.*, 283 S.W.3d at 344; *J.F.C.*, 96 S.W.3d at 266.

In reviewing termination findings for factual sufficiency of the evidence, we consider and weigh all the evidence, including disputed or conflicting evidence. *See J.O.A.*, 283 S.W.3d at 345. "If, in light of the entire record, the disputed evidence that a reasonable fact finder could not have credited in favor of the finding is so significant that a fact finder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *J.F.C.*, 96 S.W.3d

4

at 266. We cannot substitute our own judgment for that of the fact finder. *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006) (per curiam). The fact finder is the sole arbiter when assessing the credibility and demeanor of witnesses. *Id.* at 109. We are not to "second-guess the trial court's resolution of a factual dispute by relying on evidence that is either disputed, or that the court could easily have rejected as not credible." *In re L.M.I.*, 119 S.W.3d 707, 712 (Tex. 2003).

If disposition of an issue would result in a rendition of judgment, an appellate court should consider that issue before addressing any issues that would result only in a remand for a new trial. *See Natural Gas Pipeline Co. of Am. v. Pool*, 124 S.W.3d 188, 201 (Tex. 2003); *S.R.*, 452 S.W.3d at 359 (applying rule in parental termination appeal and first addressing legal sufficiency challenges). Accordingly, we first consider the challenges to the legal sufficiency of the evidence, followed by a review for factual sufficiency.

## II. Statutory Bases for Termination

Appellant's parental rights were terminated under five subsections of section 161.001(1): subsection E (endangerment);[3] subsection L (conviction of crime resulting in death or serious injury to a child);[4] subsection N (constructive abandonment);[5] subsection O (failure to complete family service plan);[6] and

---

[3] The parent has "engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child." Tex. Fam. Code Ann. § 161.001(1)(E).

[4] The parent has "been convicted or has been placed on community supervision, including deferred adjudication community supervision, for being criminally responsible for the death or serious injury of a child under [sixteen enumerated] sections of the Penal Code, or under a law of another jurisdiction that contains elements that are substantially similar to the elements of an offense under one of [those] Penal Code sections, or adjudicated under Title 3 for conduct that caused the death or serious injury of a child and that would constitute a violation of one of [those] Penal Code sections." *Id.* § 161.001(1)(L).

[5] The parent has "constructively abandoned the child who has been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than six months, and: (i) the department has made reasonable efforts to return the child

subsection Q (will be imprisoned for more than two years).[7] In appellant's first, second, and third issues, he challenges the sufficiency of the evidence to support the trial court's findings under subsections E, N, and O. He does not challenge the findings under subsections L or Q.

Subsection Q requires clear and convincing evidence that appellant "knowingly engaged in criminal conduct that has resulted in [his]: (i) conviction of an offense; and (ii) confinement or imprisonment and inability to care for the child for not less than two years from the date of filing the petition." Tex. Fam. Code Ann. § 161.001(1)(Q). "By looking at future imprisonment, subsection Q purports to protect children whose parents will be incarcerated for periods exceeding two years after termination proceedings begin." *A.V.*, 113 S.W.3d at 360–61.

The record contains an indictment alleging appellant intentionally or knowingly engaged in sexual contact with a child younger than seventeen years of age. The record also contains a judgment, signed March 23, 2015, reflecting appellant pleaded guilty to that charge and was convicted of indecency with a child by sexual contact, in violation of section 21.11(a)(1) of the Penal Code. Together, those documents constitute clear and convincing evidence of the first fact required to be proved under subsection Q: appellant knowingly engaged in criminal conduct that resulted in his conviction for an offense.

---

to the parent; (ii) the parent has not regularly visited or maintained significant contact with the child; and (iii) the parent has demonstrated an inability to provide the child with a safe environment." *Id.* § 161.001(1)(N).

[6] The parent has "failed to comply with the provisions of a court order that specifically established the actions necessary for the parent to obtain the return of the child who has been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than nine months as a result of the child's removal from the parent under Chapter 262 for the abuse or neglect of the child." *Id.* § 161.001(1)(O).

[7] The parent has "knowingly engaged in criminal conduct that has resulted in the parent's: (i) conviction of an offense; and (ii) confinement or imprisonment and inability to care for the child for not less than two years from the date of filing the petition." *Id.* § 161.001(1)(Q).

6

The second part of subsection Q requires proof that the parent "be both incarcerated or confined *and* unable to care for the child for at least two years from the date the termination petition is filed." *H.R.M.*, 209 S.W.3d at 110 (emphasis in original). Inability to care for the child is an independent requirement and is not met by showing incarceration alone. *In re B.M.R.*, 84 S.W.3d 814, 818 (Tex. App.—Houston [1st Dist.] 2002, no pet.). The incarcerated parent's willingness and ability to provide financial and emotional support are factors to be considered in determining if the parent is unable to care for the child. *See id.*

The fact of incarceration is established by the judgment, which shows appellant was sentenced to twenty-five years' imprisonment. Appellant's letter to the caseworker, which he wrote in January 2015, is evidence of his inability to support the twins. He wrote that he wanted "a lawyer to be assigned to [him] because [he] cannot afford to hire one." In June 2015, after appellant began serving his 25-year sentence, the trial court appointed counsel to represent him. We infer from the appointment that the trial court found him indigent. *See* Tex. Fam. Code Ann. § 107.013(a) (trial court must appoint counsel for indigent parent who appears in termination proceeding). His inability to pay for a lawyer while he was in prison is evidence that he will be unable to support his children financially while he is in prison. *See B.M.R.*, 84 S.W.3d at 818.

In sum, the trial court's finding under subsection 161.001(1)(Q) is not challenged by appellant, and in any event is supported by legally and factually sufficient evidence. This single finding is sufficient to support a decree of termination when there is also a finding that termination is in the children's best interest. *In re A.V.*, 113 S.W.3d at 362. In light of our conclusion regarding the trial court's finding on subsection Q, we need not address the findings under subsections E, L, N, or O. We overrule appellant's first, second, and third issues.

7

## III.  Best Interest

In his fourth issue, appellant asserts the evidence is legally and factually insufficient to support the trial court's finding that termination of appellant's parental rights is in the twins' best interest. We review the entire record in deciding a challenge to the court's best-interest finding. *E.C.R.*, 402 S.W.3d at 250.

Termination must be in the child's best interest. Tex. Fam. Code Ann. § 161.001(2). There is a strong presumption the best interest of a child is served by keeping the child with the child's natural parent. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006) (per curiam). Prompt and permanent placement of the child in a safe environment is also presumed to be in the child's best interest. *See* Tex. Fam. Code Ann. § 263.307(a).

Courts may consider the following non-exclusive factors in reviewing the sufficiency of the evidence to support the best-interest finding: the desires of the child; the physical and emotional needs of the child now and in the future; the emotional and physical danger to the child now and in the future; the parental abilities of the persons seeking custody; the programs available to assist those persons seeking custody in promoting the best interest of the child; the plans for the child by the individuals or agency seeking custody; the stability of the home or proposed placement; acts or omissions of the parent that may indicate the existing parent-child relationship is not appropriate; and any excuse for the parent's acts or omissions. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). As noted, this list of factors is not exhaustive, and evidence is not required on all the factors to support a finding that termination is in the child's best interest. *In re D.R.A.*, 374 S.W.3d 528, 533 (Tex. App.—Houston [14th Dist.] 2012, no pet.).

In addition, the Family Code sets out thirteen factors to be considered in evaluating a parent's willingness and ability to provide the child with a safe environment. *See* Tex. Fam. Code Ann. § 263.307(b). Those factors are:

i. the child's age and physical and mental vulnerabilities;

ii. the frequency and nature of out-of-home placements;

iii. the magnitude, frequency, and circumstances of harm to the child;

iv. whether the child has been the victim of repeated harm after the initial report and intervention by the Department;

v. whether the child is fearful of living in or returning to the child's home;

vi. the results of psychiatric, psychological, or developmental evaluations of the child, the child's parents, other family members, or others who have access to the child's home;

vii. whether there is a history of abusive or assaultive conduct by the child's family or others who have access to the child's home;

viii. whether there is a history of substance abuse by the child's family or others who have access to the child's home;

ix. whether the perpetrator of the harm to the child is identified;

x. the willingness and ability of the child's family to seek out, accept, and complete counseling services and to cooperate with and facilitate an appropriate agency's close supervision;

xi. the willingness and ability of the child's family to effect positive environmental and personal changes within a reasonable period of time;

xii. whether the child's family demonstrates adequate parenting skills, including providing the child with:

    (a) minimally adequate health and nutritional care;

9

(b) care, nurturance, and appropriate discipline consistent with the child's physical and psychological development;

(c) guidance and supervision consistent with the child's safety;

(d) a safe physical home environment;

(e) protection from repeated exposure to violence even though the violence may not be directed at the child; and

(f) an understanding of the child's needs and capabilities; and

xiii. whether an adequate social support system consisting of an extended family and friends is available to the child.

*Id.*; *R.R.*, 209 S.W.3d at 116.

## A. The children and their foster parents

The evidence about the twins and their foster parents is undisputed. The twins were in the hospital until December 2014. Once released, they were placed in their foster parents' home, where they remained for the duration of the case. Both babies had bonded with their foster parents, and the foster parents planned to adopt them. The foster parents consistently met the babies' emotional and physical needs.

The babies were just over one year old at the time of trial. Neither had severe health problems. Each received physical and occupational therapy every other week. Both were healthy and happy.

## B. Appellant

***Criminal history.*** Evidence of criminal conduct, convictions, or imprisonment is relevant to a review of whether a parent engaged in a course of conduct that endangered the well-being of the child. *S.R.*, 452 S.W.3d at 360–61; *A.S. v. Tex. Dep't of Family & Protective Servs.*, 394 S.W.3d 703, 712–13 (Tex. App.—El Paso 2012, no pet.).

10

In January 2005, appellant pleaded guilty in Harris County to burglary of a habitation with intent to commit theft and was sentenced to four years in prison. An indictment returned by the grand jury of Marion County in December 2012 alleged he intentionally or knowingly engaged in sexual contact with a child. Most recently, as discussed, he pleaded guilty in March 2015 to indecency with a child by sexual contact. He was serving his 25-year sentence at the time of trial.

*Substance abuse.* A parent's drug use can qualify as a voluntary, deliberate, and conscious course of conduct endangering the child's well-being. *See S.R.*, 452 S.W.3d at 361; *In re C.A.B.*, 289 S.W.3d 874, 885 (Tex. App.—Houston [14th Dist.] 2009, no pet.). Appellant was ordered to submit to a drug test in early October 2014. He walked out of the testing facility before samples could be collected. His refusal to submit to the drug test may be treated by the trial court as if he had tested positive for drugs. *C.A.B.*, 289 S.W.3d at 885 ("A factfinder reasonably could infer that [the mother's] failure to submit to the court-ordered drug screening indicated she was avoiding testing because she was using drugs."); *accord In re C.J.S.*, 383 S.W.3d 682, 689 (Tex. App.—Houston [14th Dist.] 2012, no pet.).

*Failure to complete court-ordered services.* The Department caseworker testified it was difficult to locate appellant when he was in custody because he was moved from prison to prison. She said she mailed appellant a copy of the family service plan. At least some mail was returned to her, however. There is evidence appellant did not receive a copy of the family service plan.

Appellant did know the identity of the caseworker; he wrote her a letter in January 2015 from the Harris County Jail. That was the only communication she received from him, even though appellant was reportedly not in jail for approximately six months during this case. The trial court reasonably could have

11

inferred from appellant's lack of further communication that he was unwilling to complete the requirements for him to be involved in the twins' lives.

Finally, appellant presented no evidence at trial regarding his abilities and skills as a parent, his plans for the children, or his ability to provide a stable placement and adequate support system despite his incarceration.

In summary, the evidence is undisputed that the twins are well cared for and happy with their foster parents, who plan to adopt them. The evidence is also undisputed that appellant has a criminal history. He has been indicted at least twice for sexual contact with a child, and he pleaded guilty to one of those charges. He refused to take a drug test, and but for one letter in January 2015, he demonstrated no interest in parenting his children. Accordingly, we conclude the evidence is legally and factually sufficient to support the trial court's finding that termination of appellant's parental rights is in the children's best interest. We overrule appellant's fourth issue.

## CONCLUSION

Having overruled appellant's issues, we affirm the trial court's judgment.


/s/     J. Brett Busby
         Justice

Panel consists of Justices Christopher, McCally, and Busby.

12